Dana Michelle **ALDRICH**, Appellant,

v.

The **STATE of Texas**, Appellee.

Nos. 05–00–00109–CR, 05–00–00110–CR.

Court of Appeals of Texas, Dallas.

July 18, 2001.

Rehearing Overruled Aug. 30, 2001.

Michael E. Miller, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Christina O'Neil, Dist. Attorney Office, Dallas, for State.

Before Justices LAGARDE, FITZGERALD, and RICHTER.

## OPINION

Opinion By Justice FITZGERALD.

Dana Michelle Aldrich appeals her convictions for impersonating a public servant. Appellant pleaded guilty to the indictments and true to the enhancement allegations without an agreement as to punishment. The trial court accepted her pleas of guilty and true and sentenced her to five years' imprisonment. Appellant brings two issues on appeal asserting: (1) "the court abused its discretion (unknowingly) in not rejecting appellant's plea of guilty" (appellant's parentheses); and (2) she did not receive effective assistance of counsel. We resolve appellant's issues against her and affirm the trial court's judgments.

## BACKGROUND

Appellant was charged in two indictments on separate incidents of impersonating a public servant. In cause number 05–00–00109–CR, the indictment alleged that appellant impersonated a police officer "by demanding Arlene Galvan open the door so that [appellant] could arrest said occupants." In cause number 05–00–00110–CR, the indictment alleged that appellant impersonated a police officer by "demanding Cole Gillean to turn around and be arrested." Each indictment contained a second paragraph alleging a prior conviction for burglary of a habitation.

At a hearing on December 15, 1999, after being admonished by the trial court,[1] appellant entered guilty pleas to both indictments and pleas of true to the enhancement allegations. The trial court admitted into evidence without objection documents entitled "Waiver of Jury, Felony Plea of Guilty/Nolo Contendere/Indictment/Information" containing confessions in which appellant stated: "I do further admit and judicially confess that I am the person named in the charging instrument and that I understand the charge contained therein and I am GUILTY of the offense of impersonating an officer exactly as alleged in the charging instrument . . . and I confess that I did unlawfully commit the said offense in Dallas County, Texas on the 30th day of Oct., 1999."

The evidence of the underlying facts of the offenses presented at the plea hearing included the confessions incorporating the indictments and the following dialogue between appellant and the trial court:

The Court: What the police and the prosecutor claim happened is that you went over to a motel in Mesquite and claimed to be a police officer so the clerk would let you in to one of the rooms, and that's true; is that correct?

[Appellant]: Yes, sir. I had already been in the room.

The Court: Right. But you wanted to get back in the room and you thought if you claimed to be a police officer they'd let you back in the room without asking a bunch of questions?

[Appellant]: Yes, sir.

The trial court, after being personally assured three times by appellant that no one forced her, threatened her, or promised her anything to get her to plead guilty, accepted appellant's pleas of guilty and true in each case. Following the introduction of the State's evidence, the trial court stated "I'll find all that is proven beyond a reasonable doubt. I'll find the evidence sufficient to find you guilty, find the enhancement paragraph is true. I will set sentencing" for January 6, 2000.

The punishment hearing took place on January 6, 2000 before a different judge.[2] Appellant testified at the hearing she wanted to plead guilty and did not want to contest her guilt before either a jury or a judge. Appellant wanted the trial court to assess punishment. She acknowledged that she could receive up to twenty years' imprisonment, but she requested probation so she could help her ailing grandmother. After appellant testified that she could live up to the terms of probation, her attorney asked her if she had anything else she

---

1. Appellant does not contest the sufficiency of the trial court's admonishments on appeal. *See Brown v. State,* 11 S.W.3d 360, 362 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

2. Appellant asserts in her brief on appeal: "Appellant believes that the statements she made before Judge Dean on the earlier date must be attributable to the knowledge that Judge Hampton is assumed to have possessed on the latter date." We do not disagree.

wanted to say to the trial court. Appellant responded as follows:

> [Appellant]: Well, to everything that happened that day that I said I was a peace officer, I am guilty of saying that. I did say that I was a peace officer but I did not have a badge, no gun, no uniform, nor did I tell them at any time to turn around and place their hands behind their back. From reading the indictment, that's what it said. I did not say that.
>
> I went to the manager's office and told her to call the police because they wanted to do something else which I didn't want to do. So when she called the police, I had left from the motel and they arrested me at a different place that I was visiting some friends at.
>
> So when the police officer[s] arrested me, I asked what I was being arrested for, and they said impersonating a peace officer. And I tried to explain to them the day they arrested me that I didn't do it just to be getting anything out of it. I did it to save myself because the guys were trying to rape me.
>
> So, that's about all I have to say. And I guess the manager had misunderstood me because I talk fast when I get scared. I talk fast, anyway. So when I get scared, I even talk faster. So when I was trying to explain it to her, I took her out in the parking lot of the motel and pointed out the room where the guys were standing the day everything happened.
>
> The Court: You've already pled guilty. I can't find you not guilty.
>
> [Appellant]: No, I'm guilty of saying it.
>
> The Court: I'm just trying to decide what I should do to you.
>
> [Appellant]: I'm guilty of saying it.

Appellant testified about her criminal history, which showed she originally received deferred adjudication with five years' probation on the burglary charge. Appellant stated she violated her probation within a year by committing credit card abuse and evading arrest, for which she was sentenced to two years' imprisonment and served eighteen months in the penitentiary.

Appellant also presented the testimony of her employer, Harold Helm, who supervised appellant's training as a boxer in his amateur program. In response to the trial court's questions, Helm testified to what appellant had told him about how the incidents occurred:

> The Court: You understand what she pled guilty to was impersonating a police officer?
>
> [Helm]: Yes. When I asked her why she did that—
>
> The Court: Yeah.
>
> [Helm]:—she told me about what she tried to explain to you. I think she had some communication skill problems in communicating. But she told me that some guys were trying to do something she didn't want done.
>
> I asked her, "Why did you do this? My gosh." And she explained that to me. And I said, well, it sounded like something she did out of necessity, you know, on the thing.
>
> But she went ahead and pled the way she did so she understands how the laws work and she didn't have a trial, but she did tell me that or related that. And I said, "you shouldn't get yourself in those situations no more." She thought she was doing the right thing at that time.
>
> The Court: Did she tell you why she was at that motel?

[Helm]: They were supposed to have a party there. She was invited to a party. She found out she was the only party. She asked where the other girls were. They weren't there so she just wanted to go. They wouldn't let her go. That's when she said that. Then she went down and asked the manager to call the police and she took her outside and pointed out the room. That's what she explained to me. And I said, "Oh, my gosh almighty, what a mess you got into."

After the parties rested in the punishment phase, the State requested that the trial court sentence appellant to the penitentiary, and appellant requested probation. After considering her criminal history, the trial court stated she would be sentenced to five years' imprisonment. Appellant protested that her family depended on her being able to help them, and she told the court, "I promise to fulfill anything that I need to, but I don't deserve to go back to TDC because I just said those words." The trial court told her, "Well, your credibility is just not very good, you know, when you go around telling people you're a police officer and you are not." Appellant again protested her sentence saying, "Sir, I didn't know what else to say, sir, at the time."

On appeal, appellant asserts that her statements at the punishment hearing and Helm's testimony of her explanation to him raised the defense of necessity. In her two issues, appellant asserts the trial court or her counsel should have acted in response to the raising of this defense.

## APPELLANT'S GUILTY PLEAS

### The Arlene Galvan Indictment in Cause No. 05–00–00109–CR

■ The indictment alleges appellant demanded "Arlene Galvan open the door so that [appellant] could arrest said occupants." Thus, the indictment alleges appellant sought Galvan's assistance to enter the room. However, appellant's purported "necessity defense" sought to prove she was seeking to escape from people in a room. Thus, appellant's evidence in support of her purported "necessity defense" is not conceivably consistent with or related to the allegations in this indictment and does not make "evident the innocence of the accused or ... reasonably and fairly raise[ ] an issue as to such fact." *Moon v. State*, 572 S.W.2d 681, 682 (Tex.Crim.App. 1978). This Court concludes appellant's contention regarding her purported "necessity defense" does not apply in cause number 05–00–00109–CR. We conclude appellant's points of error are inapplicable to her conviction in cause number 05–00–00109–CR and affirm this conviction.

### The Cole Gillean Indictment in Cause No. 05–00–00110–CR

In her first issue, appellant contends: "The court (unknowingly) abused its discretion in not rejecting appellant's plea of guilty" (appellant's parentheses). Appellant asserts the trial court should have either found her not guilty or set aside her plea of guilty based on her evidence that "she impersonated a police officer to extricate herself from a sexual assault situation," which raised the necessity defense.

■ Appellant cites *Payne v. State*, 790 S.W.2d 649 (Tex.Crim.App.1990), for the proposition that the trial court erred in not withdrawing appellant's guilty plea. In *Payne*, the defendant introduced evidence of his innocence and *timely requested* that he be allowed to withdraw his guilty plea.[3] *See id.* at 651. This Court

---

**3.** If a defendant timely requests, he may withdraw his plea of guilty at any time before

held the trial court erred in not permitting the defendant to withdraw his guilty plea, but we held the error was harmless based on two opinions from the court of criminal appeals. *See id.* The court of criminal appeals distinguished the cases we cited from the facts of the case then before us, held the error in not permitting the defendant to withdraw his guilty plea was not harmless, and reversed our decision. *See id.* at 652.

*Payne* is distinguishable because the defendant in that case *timely* moved to withdraw his guilty plea, while in this case appellant *never* moved to withdraw her pleas and only now argues that the trial court erred by not *sua sponte* rejecting her pleas. Further, the defendant in *Payne* presented evidence of his innocence "[p]rior to the close of evidence," while appellant presented the evidence she asserts raises the necessity defense after the trial court had entered findings of guilt in each case, found the enhancement paragraphs true, and passed the cases for sentencing. *See id.* (discussing *Wilson v. State*, 515 S.W.2d 274 (Tex.Crim.App.1974), a case "procedurally identical" to *Payne*). Contrary to appellant's assertion, *Payne* does not hold that a trial court abuses its discretion by not setting aside a defendant's guilty plea when, at the sentencing hearing, the trial court admits new evidence raising a "defense."

■ Appellant acknowledges the rule applicable in this case is expressed in *Moon v. State*, 572 S.W.2d 681 (Tex.Crim. App.1978). The trial court is not required to withdraw a defendant's plea of guilty *sua sponte* and enter a plea of not guilty when a defendant enters a plea of guilty before the trial court after waiving a jury, even if evidence is presented that either makes the defendant's innocence evident or reasonably and fairly raises an issue as to his guilt. *See id.* at 682. The *Moon* decision reasoned that it is the trial court's duty to consider the evidence submitted and, as the trier of facts, the court may find the defendant guilty of the crime charged or a lesser offense or it may acquit the defendant. Thus, no valid purpose would be served to require a trial court to withdraw a guilty plea. *See Moon*, 572 S.W.2d at 682; *Solis v. State*, 945 S.W.2d 300, 303 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd); *Edwards v. State*, 921 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1996, no pet.).

■ Necessity is a statutory defense of justification. The defense of necessity is available for criminal conduct only if (1) the defendant reasonably believes his conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise appear. *See* TEX. PEN.CODE ANN. § 9.22 (Vernon 1994).

■ The rationale of this defense is that "even though he has done the act the crime requires and has the mental state

judgment is pronounced or his case is taken under advisement by the trial court. A case is taken under advisement when the defendant's guilt has been established and only punishment issues remain. *See Scott v. State*, 860 S.W.2d 645, 646 (Tex.App.—Dallas 1993, no pet.). After a case is taken under advisement, the decision to permit withdrawal of a guilty plea rests in the trial court's sound discretion.

*See Jackson v. State*, 590 S.W.2d 514, 515 (Tex.Crim.App. [Panel Op.] 1979); *Watson v. State*, 974 S.W.2d 763, 765 (Tex.App.—San Antonio 1998, pet. ref'd). Abuse of discretion is shown only when the trial court's ruling lies outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude." *Arnwine v. State,* 20 S.W.3d 155, 159 (Tex.App.—Texarkana 2000, no pet.) (quoting *Alford v. State,* 866 S.W.2d 619, 624 n. 9 (Tex.Crim.App.1993)). The defendant must establish he reasonably believed his conduct was immediately necessary to avoid imminent harm. *See Maldonado v. State,* 902 S.W.2d 708, 712 (Tex.App.—El Paso 1995, no pet.).

■ To raise the defense of necessity, a defendant must admit violating the statute under which he is charged. Only if the defendant admits committing the offense may he offer necessity as a justification. *See Young v. State,* 991 S.W.2d 835, 839 (Tex.Crim.App.1999); *Darty v. State,* 994 S.W.2d 215, 218 (Tex.App.—San Antonio 1999, pet. ref'd). In *McGarity v. State,* 5 S.W.3d 223, 227 (Tex.App.—San Antonio1999, no pet.), the indictment charged the defendant with the improper conduct of "striking Woodard with the hand of defendant," but the defendant never admitted to hitting Woodard in the face. Because the defendant failed to admit to the offense, the evidence failed to raise the defense of necessity. The court emphasized that "one cannot establish that an act is justified without first identifying, or admitting to the commission of the act." *McGarity,* 5 S.W.3d at 227; *see also Shugart v. State,* 32 S.W.3d 355, 364 (Tex. App.—Waco 2000, pet. ref'd) ("in order to warrant a plea of justification based on necessity, the defendant must specifically admit to the offense").

■ In this case, although appellant admitted saying she was a peace officer,

she denied having a badge, gun, or uniform or telling "them at any time to turn around and place their hands behind their back." However, the indictment did not allege that appellant told the men she was a peace officer; it alleged she committed the offense of impersonating a peace officer by demanding Cole Gillean "to turn around and be arrested." By denying she told the men "to turn around and place their hands behind their back," appellant denied the allegations of the indictment. Therefore, because appellant's testimony not only does not admit, but specifically denies, committing the offense as alleged in the indictment, she did not raise the defense of necessity. Accordingly, we conclude that the trial court did not abuse its discretion in not rejecting appellant's pleas of guilty.[4]

■ The record also shows that at all times during the proceedings, appellant persisted in her plea of guilty, even after her brief statement to the trial court, urging only that the trial court grant her leniency by placing her on community supervision. Appellant did not request permission to change or withdraw her plea of guilty, move the court to find her not guilty, suggest she should be convicted of a lesser included offense, or lodge any objection whatever to the proceedings. Appellant expressly encouraged the trial court to proceed with a finding of guilt. Throughout the entire proceedings, appellant urged the trial court to proceed with a finding of guilt and grant community supervision in both cases. We are not inclined to permit appellant to benefit from inviting the trial court to take the very actions complained of on this appeal. *See*

---

4. Because appellant has not shown she raised the defense of necessity, we need not reach appellant's arguments concerning the legal correctness of the trial court's statement, "I can't find you not guilty," because those arguments were premised on appellant's having raised the necessity defense.

*Capistran v. State,* 759 S.W.2d 121, 124 (Tex.Crim.App.1982) (op. on reh'g). Under these circumstances, we find appellant waived error, if any. *See* TEX.R.APP. P. 33.1(a); *Williams v. State,* 10 S.W.3d 788, 789 (Tex.App.—Waco 2000, pet. ref'd).

Accordingly, we resolve appellant's first issue against her.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ In her second issue, appellant contends she did not receive effective assistance of counsel at trial. The right to effective assistance of counsel is guaranteed under both the federal and state constitutions. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established an authoritative federal constitutional standard for determining ineffectiveness of counsel and for ascertaining when such ineffectiveness is prejudicial. The Texas Court of Criminal Appeals has adopted the *Strickland* standard for judging claims under the Texas Constitution. *See Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986).

■ The *Strickland–Hernandez* standard establishes a two-part test to be used in considering ineffectiveness claims. First, an appellant must show that trial counsel's representation fell below an objective standard of reasonableness in that counsel made errors so serious that counsel was not functioning as the reasonably effective counsel guaranteed by the state and federal constitutions. Second, an appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052;

*Hernandez,* 726 S.W.2d at 55. The alleged deficiencies of counsel must be supported by the record. *Johnson v. State,* 691 S.W.2d 619, 626–27 (Tex.Crim.App.1984). This standard applies at both the guilt and punishment phases of trial. *See Hernandez v. State,* 988 S.W.2d 770, 770 (Tex. Crim.App.1999).

■ We are given further aid in judging the first prong of the *Strickland– Hernandez* test:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55. Judicial scrutiny of counsel's performance must be highly deferential; a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Thus, an appellant faces the onerous burden of overcoming a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *see also Small v. State,* 692 S.W.2d 536, 538 (Tex.App.—Dallas 1985, pet. ref'd).

■ We do not inquire into defense counsel's trial strategy unless no possible basis exists in strategy or tactics for trial counsel's actions. *See Johnson v. State,* 614 S.W.2d 148, 152 (Tex.Crim.App. [Panel Op.] 1981). When the record contains no

evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *See Jackson v. State,* 877 S.W.2d 768, 772 (Tex. Crim.App.1994). A silent record does not require an appellate court to speculate on the reason for trial counsel's decisions. *See id.* at 771. Our speculation on the reasons for trial counsel's actions is "not material." *Id.* Without trial counsel's explanation of the reasons for the action or inaction alleged as error, an appellant will have difficulty overcoming the strong presumption that counsel's decisions fell within the wide range of reasonable professional assistance. *See Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999). With these standards in mind, we examine the acts and omissions that appellant alleges were not the result of reasonable professional judgment.

▮▮▮▮ Appellant argues that her counsel was ineffective because "she failed to put on the record any indication that she had advised the Appellant that she (the appellant) enjoyed the defense of necessity and was consciously waiving it. Nor did defense counsel indicate that she (defense counsel) knew that necessity was available to appellant as a defense" (appellant's parentheses). Appellant's argument is contrary to the burden of showing that counsel was ineffective. The standard of review requires the record to show: (1) counsel's advice was not within the range of competence demanded of attorneys in criminal cases; and (2) but for counsel's errors, appellant would not have pleaded guilty and would have insisted on going to trial. *See Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex.Crim.App.1999); *Flores v. State,* 18 S.W.3d 796, 799 (Tex.App.— Austin 2000, no pet.). To prevail on an ineffective assistance of counsel claim, the

record must affirmatively show that counsel was ineffective. Appellant's argument is that the record fails to show counsel was effective. Counsel had no duty to present evidence of all the possible defenses appellant could have asserted or to present evidence of an affirmative waiver by appellant of those defenses. In addition, we reject appellant's argument based upon our resolution of her first issue.

▮▮▮▮ Appellant also asserts counsel was ineffective because she "failed to advise the court that appellant had not previously been found guilty." Appellant does not explain why such advice was necessary or how the failure to give that advice affected the outcome of the case. If appellant means that she had the right to withdraw her plea because the trial court had not found her guilty, then appellant is incorrect. As we stated in *Scott,* "There is no requirement that there be a finding of guilt before a case is considered to have been taken under advisement." *Scott v. State,* 860 S.W.2d 645, 646 (Tex.App.— Dallas 1993, no pet.). As soon as the cases were "under advisement," appellant had no right to withdraw her plea. Appellant has not shown her counsel was ineffective.

▮▮▮ Appellant states in her brief under this issue, "Indeed, the record shows gives [sic] no indication that the plea is voluntary. It does not show that appellant knew she had the defense of necessity and consciously waived such defense, although it affirmatively shows that factually she believed that she did what she did out of necessity." Appellant's argument that the record does not show she knew of and consciously waived an applicable defense does not properly assert that counsel's ineffective assistance rendered her plea involuntary.[5]

---

**5.** To be constitutionally valid, a guilty plea must be knowing and voluntary. *See Brady v.*

*United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *see also* TEX.

■■ Furthermore, nothing in the record shows appellant was not fully advised by her counsel of all potential defenses, including necessity, and that appellant still chose to plead guilty. Nor does the record show that appellant's decision to plead guilty was based on the advice of her counsel. Appellant never complained during the hearings about being found guilty; her only complaint was to the trial court's conclusion that she was not a worthy candidate for community supervision and that she should be sentenced to five years' imprisonment. Appellant was admonished orally and in writing about the consequences of her plea. Appellant's receipt of the statutory admonishments is prima facie proof that her plea was voluntary. *See Cantu v. State*, 988 S.W.2d 481, 484 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The fact that a properly admonished defendant receives penitentiary time instead of community supervision does not render a guilty plea involuntary. *See Malley v. State*, 9 S.W.3d 925, 929 (Tex.App.—Beaumont 2000, pet. ref'd). We conclude appellant has not shown she was deprived of the effective assistance of counsel. We resolve appellant's second issue against her.

We affirm the trial court's judgments.

RICHTER, J. dissenting

RICHTER, Justice, dissenting.

Appellant Dana Michelle Aldrich entered open pleas of guilty to two felony offenses of impersonating a public servant, enhanced by one prior felony conviction.

Appellant was sentenced to five years imprisonment in each case. In two points of error, appellant contends the trial court unknowingly abused its discretion in not rejecting her guilty pleas and further contends she was deprived of effective assistance of counsel. The majority affirms appellant's convictions, concluding appellant did not raise the defense of necessity and waived any error by not objecting to the trial court's failure to consider her defenses sua sponte. Because the majority fails to consider appellant's alternative defense of lack of criminal intent and imposes a preservation requirement which does not exist, I respectfully dissent. I would reverse and remand the causes for further proceedings.

### FACTUAL BACKGROUND

On December 15, 1999, appellant appeared before the Honorable Keith Dean for the purpose of entering an open plea of guilty for both offenses. The trial judge first admonished appellant regarding the sentencing range for the offenses and determined appellant had no questions regarding the plea papers she signed. After appellant entered her pleas of guilty, the trial court inquired as to appellant's guilt as follows:

> The Court: What the police and the prosecutor claim happened is that you went over to a motel in Mesquite and claimed to be a police officer so the clerk would let you in to one of the rooms, and that's true, is that correct?

CODE CRIM. PROC. ANN. art. 26.13 (Vernon 1989). The State establishes a prima facie showing that the plea of guilty was knowing and voluntary if the record reflects the trial court properly admonished the defendant. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(c) (Vernon 1989); *Crawford v. State*, 890 S.W.2d 941, 944 (Tex.App.—San Antonio 1994, no pet.). The burden shifts to the defendant, who must show that he pleaded guilty without understanding the consequences of his plea of guilty and consequently suffered harm. *See Fuentes v. State*, 688 S.W.2d 542, 544 (Tex. Crim.App.1985). The mere fact the punishment was higher than anticipated or hoped for does not render a guilty plea involuntary. *See Tovar–Torres v. State*, 860 S.W.2d 176, 178 (Tex.App.—Dallas 1993, no pet.) (per curiam); *Rice v. State*, 789 S.W.2d 604, 607 (Tex.App.—Dallas 1990, no pet.) (per curiam).

Appellant: Yes sir. I had already been in the room.

The Court: Right. But you wanted to get back in the room and you thought if you claimed to be a police officer they'd let you back in the room without asking a bunch of questions?

Appellant: Yes, sir.

The trial court also confirmed appellant had not been forced, threatened, or promised anything in return for her pleas. The state offered into evidence appellant's signed confessions[1] and pleas of true to one enhancement paragraph. The trial court found the evidence sufficient to find appellant guilty and prove the offenses beyond a reasonable doubt, and he accepted appellant's guilty pleas. However, the trial court did not adjudicate appellant at that time. Rather, the trial court set the cases for adjudication of guilt and assessment of punishment at a hearing to be held on January 6, 2000.

On January 6, 2000, appellant appeared before a visiting judge, the Honorable Jack Hampton, and offered evidence regarding punishment. Appellant testified and was asked a series of leading questions by her attorney, apparently in an attempt to lay the groundwork for probation, to which appellant responded almost invariably, "Yes ma'am." Her attorney then asked appellant to address the judge directly with anything else she had to say. In response, appellant proceeded with a narrative explanation of her version of events at the motel.

Appellant testified she went to a motel room for a party and discovered she had been the only female invited to the room. Several men in the room refused to let her leave, and she feared she was going to be raped. She then told the men she was a police officer, which allowed her to make her escape from the room. After leaving the room, she went to the motel manager, told the manager what had transpired, pointed out the room, and asked the manager to call the police. She then left the motel and went to a friend's house. Shortly thereafter, police arrested appellant for impersonating a public servant. Appellant attempted to tell the officers she "didn't do it just to be getting anything out of it. I did it to save myself because the guys were trying to rape me." Appellant also tried to explain what she had said to the motel manager:

And I guess the manager had misunderstood me because I talk fast when I get scared. I talk fast, anyway. So when I get scared, I even talk faster. So when I was trying to explain it to her, I took her out in the parking lot of the motel and pointed out the room where the guys were standing the day everything happened.

At this point, the visiting judge interjected: "You've already pled guilty. I can't find you not guilty." Appellant responded by acknowledging, "I'm guilty of saying it." The judge then stated, "I'm just trying to decide what I should do to you." Appellant repeated she was "guilty of saying it," and at that point appellant's attorney redirected the questioning back to appellant's plea for probation. Appellant's employer later testified and confirmed that appellant had relayed a similar account to him of what had occurred at the motel. The State did not question either

---

1. The confessions admitted into evidence consist of a pre-printed form with a check mark in a blank beside the phrase, "I am GUILTY of the offense of," with the phrase "Impersonating an Officer" handwritten on the blank below. Two additional confessions contained in the clerk's record merely track the language of the indictments. Otherwise, the confessions shed no light on appellant's version of events.

witness, call any witnesses of its own, or introduce any evidence.

The visiting judge then proceeded to sentence appellant to five years imprisonment, although neither he nor the presiding judge had adjudicated appellant guilty. The judge simply noted appellant had previously received deferred adjudication for a prior offense, her probation had been revoked for that offense, and he did not consider her to be a good candidate for probation. After being sentenced, appellant again pleaded with the court that she did not "deserve to go back to TDC because I just said those words" and that she "didn't know what else to say ... at the time." The visiting judge, however, refused to reconsider his decision.

At no time during the punishment hearing did the visiting judge indicate he intended to make a guilt-innocence determination based on appellant's testimony at the plea hearing, nor did he acknowledge that he had the power to find appellant not guilty if appellant raised issues as to her innocence. Rather, by his comments the judge indicated just the opposite: that he considered appellant's guilt to have been determined by her plea and he had no power to decide otherwise, regardless of what appellant testified to at the hearing.

After the punishment hearing and oral pronouncement of sentence, the judge signed form judgments adjudicating appellant guilty in each case and sentencing appellant to five-year concurrent sentences.

### ANALYSIS

In her first point of error, appellant contends the trial court unknowingly abused its discretion in not rejecting appellant's guilty pleas. Specifically, appellant argues that during her testimony on punishment, appellant raised the defenses of necessity *and* lack of criminal intent.

Appellant contends the visiting judge's comment that "You've already pled guilty. I can't find you not guilty," shows the judge erroneously believed appellant had already been adjudicated and that he failed to understand he still had the option of finding appellant not guilty. I agree with appellant. The evidence reasonably and fairly raised issues as to appellant's guilt and the trial judge should have determined whether appellant was guilty before sentencing her. He erred in failing to do so.

The rule in *Moon* controls these appeals: "It is the duty of the trial court to consider the evidence [of innocence] submitted and as the trier of the facts the court may find the appellant guilty of a lesser offense and assess the appropriate punishment or it may find the defendant not guilty." *Moon v. State,* 572 S.W.2d 681, 682 (Tex.Crim. App.1978). This rule has lengthy roots in Texas practice. "It has long been the rule in our State that no one will be allowed to plead guilty in a felony case when evidence is introduced which casts doubt on the actual guilt of the accused." *Griffin v. State,* 703 S.W.2d 193, 195 (Tex.Crim.App. 1986) (per White, J., with three judges concurring in result); *see also Moon,* 572 S.W.2d at 682 (collecting cases). "[T]he purpose of this admittedly sound rule of law so firmly established by our judiciary is to insure that the defendant's plea is in all ways made voluntarily and knowingly." *Griffin,* 703 S.W.2d at 196. "This rule is a vital safeguard which operates to protect the accused from any outside pressure which could result in an innocent party being convicted, upon his own plea of guilty, of a crime he did not commit." *Id.* at 195. The responsibility of evoking the rule is placed on the trial court because the trial judge is "the principal public official whose obligation it is in a criminal case to see that 'all individuals are tried and sentenced in accordance with law.'"

*Moon,* 572 S.W.2d at 689 (Roberts, J., concurring) (quoting *Ex Parte Curtis,* 568 S.W.2d 363, 367 (Tex.Crim.App.1978)). It is, therefore, incumbent upon the trial judge to "intrude himself into the guilty plea hearing when the voluntariness of the plea comes into question." *Id.*

In determining whether the evidence reasonably and fairly raises a defensive issue, a totality of the circumstances test is employed. *See Griffin,* 703 S.W.2d at 196. This is done "to assure the voluntary nature of the plea" because "a person cannot at any time involuntarily plead guilty to a crime for which he is accused." *Id.* at 195. It is insufficient, however, if the evidence merely "tends" to raise a defensive issue, it must "reasonably and fairly" do so. *Id.* at 196. Thus, whenever evidence is introduced which under the totality of the circumstances "reasonably and fairly" raises an issue as to the defendant's guilt, and such evidence is not withdrawn, the trial court is required to sua sponte consider all the evidence presented and may find the defendant not guilty or guilty of a lesser offense. *Id.* at 195–96; *Moon,* 572 S.W.2d at 682.

Prior to *Moon,* a trial court in such a situation could not proceed to determine the defendant's guilt. Instead, the court was required to withdraw the defendant's guilty plea and enter a not guilty plea for the defendant. *See Moon,* 572 S.W.2d at 682. In *Moon,* however, the court of criminal appeals recognized that the code of criminal procedure no longer requires a plea to be withdrawn and the case set for trial when the defendant pleads guilty, waives a jury trial, and elects to have the trial court assess punishment. In such an instance, however, the trial court, as trier of fact, must itself consider all the evidence presented and then has the option of finding the defendant not guilty or guilty of a lesser offense. *Id.* As the court stated in *Moon:*

> The 1965 Code of Criminal Procedure provides that a defendant may waive a jury trial and enter a plea of not guilty before the court in all except capital cases. Articles 1.13 and 1.14, V.A.C.C.P. There now seems to be no valid reason for the court to withdraw the guilty plea and enter a plea of not guilty for the defendant when the defendant enters a plea of guilty before the court after waiving a jury. It is the duty of the trial court to consider the evidence submitted and as the trier of the facts the court may find the appellant guilty of a lesser offense and assess the appropriate punishment or it may find the defendant not guilty. It would serve no purpose to withdraw the plea of guilty and enter a not guilty plea.

*Id.; see also* TEX.CODE CRIM. PROC. ANN. art. 1.13, 1.14 (Vernon Supp.2001). *Moon* remains good law. *Coronado v. State,* 25 S.W.3d 806, 809 (Tex.App.—Waco 2000, no pet.). Consequently, when the defendant waives a jury trial, pleads guilty, and subsequently raises a defensive issue, the trial court need no longer withdraw a guilty plea and submit the issue of defendant's guilt to a jury. Rather, the trial court is empowered to determine the issue itself. *See, e.g., Brown v. State,* 11 S.W.3d 360, 362–63 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd). In the present case, the trial court erred in failing to do so.

The majority concludes *Moon* is inapplicable here because appellant failed to raise the defense of necessity. I do not find the majority's analysis to be convincing in either case. In cause number 05–00–00110–CR, the majority engrafts an additional requirement onto the necessity defense, heretofore not recognized by any authority. It is insufficient, according to the majority, that the defendant admit the of-

fense; the defendant must also not deny any of the facts alleged in the indictment. In this case, the majority contends appellant failed to admit the offense because the indictment charged she committed the offense by demanding Cole Gillean "to turn around and be arrested." Appellant, on the other hand, denied she told her would-be assailants "to turn around and place their hands behind their back." Appellant did not deny that she stated she intended to place the complainant under arrest, and the indictment does not allege appellant told anyone to "place their hands behind their back." Therefore, the majority's conclusion turns on appellant's denial that she told the complainant "to turn around." This is mere surplusage. It is no more important than if appellant had denied telling Cole Gillean to hop on one foot. Appellant admitted to impersonating an officer. I cannot agree she forfeited her necessity defense merely because she denied telling the complainant to turn around. Moreover, the majority's analysis leads it to the untenable conclusion that appellant's testimony failed to raise a defense *because she specifically denied the offense as alleged in the indictment.* This cannot be a proper application of *Moon.*

In cause number 05–00–00109–CR the majority perfunctorily concludes that because the indictment alleged appellant demanded the complainant open the door of the motel room so she could arrest the occupants, the "necessity defense is not conceivably consistent with or related to the allegations" in the indictment. The majority therefore concludes the trial judge was not required to consider appellant's evidence for guilt-innocence because it could not possibly have been relevant to her necessity defense. Again, I disagree. Appellant testified that when she fled the motel room and sought the assistance of the motel manager, she was "frightened" and "nervous." The motel manager was apparently uncooperative (she did, after all, become the complainant). The emergency appellant claims to have existed did not cease merely because she escaped the motel room. Her assailants were still on the premises and were free to pursue her. It is quite plausible that a young woman, having narrowly avoided a sexual assault from several men in a motel room by pretending to be a police officer, might well feel compelled to continue the ruse until she escaped the property altogether. In her agitated state, particularly if confronted with a skeptical motel manager, appellant may have thought it necessary to trick the manager into confronting the men before appellant thought she could safely leave the property. Appellant could have accomplished this in the manner alleged in the indictment. It is unrealistic to expect calm, logical behavior in such a situation. Therefore, I cannot conclude as a matter of law that appellant's defense of necessity was so inapposite to the indictment that the trial court was not required to consider it. The necessity defense is assessed from the standpoint of the accused. *Arnwine v. State,* 20 S.W.3d 155, 159 (Tex.App.—Texarkana 2000, no pet.); *Gonzales v. State,* 2 S.W.3d 600, 605 (Tex. App.—Texarkana 1999, pet. ref'd); *see also Contreras,* 998 S.W.2d at 664 ("determination of the reasonableness of an accused's belief ... should be viewed from the accused's standpoint at the time he acted"). Appellant could have reasonably believed her conduct was immediately necessary to avoid imminent harm. *See Vasquez v. State,* 830 S.W.2d 948, 950 (Tex. Crim.App.1992) (holding trial counsel was ineffective for failing to raise necessity defense to offense of possession of a firearm by a felon where a released felon claimed to have been kidnaped by ex-members of a prison gang and, having escaped, continued to possess a gun because he thought

his captors were still on the premises and "out to get him."); *accord Spakes v. State*, 913 S.W.2d 597, 598 (Tex.Crim.App.1996) (holding attempt to surrender is not a predicate to the necessity defense in a prosecution for the offense of escape so long as inmate's initial departure was immediately necessary to avoid imminent harm).

Nonetheless, it is unnecessary to conclude appellant raised the defense of necessity in these cases because when the evidence is viewed in the totality of the surrounding circumstances it is apparent appellant raised the defense of lack of criminal intent. Although not mentioned by the majority, appellant does not rely solely on having raised the defense of necessity. She makes the alternative argument that her testimony raised the defense of lack of criminal intent.[2] I agree. *Moon* does not require the defendant to raise the defense of necessity; any evidence which reasonably and fairly raises an issue as to the defendant's guilt is sufficient. *See Moon*, 572 S.W.2d at 682. Additionally, a defendant is entitled to raise multiple defensive issues, even if some defenses are inconsistent with other defenses. *See Thomas v. State*, 678 S.W.2d 82, 84–85

(Tex.Crim.App.1984); *Darty v. State*, 994 S.W.2d 215, 219 (Tex.App.—San Antonio 1999, pet. ref'd). In order to be guilty of the offense of impersonating a public servant, the offender must impersonate the servant "with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." TEX. PEN.CODE ANN. § 37.11(a) (Vernon Supp.2001). Therefore, impersonating a public servant is never a crime unless accompanied by the requisite intent. *Harrison v. State*, 633 S.W.2d 337, 339 (Tex. App.—Houston [14th Dist.] 1982, no pet.).[3]

Appellant testified she did not claim to be an officer "just to be getting anything out of it," but she "did it to save myself because the guys were trying to rape me" and she "didn't know what else to say ... at the time." She also stated she "was trying to explain it" to the motel manager but the manager "misunderstood me because I talk fast when I get scared." Yet she also repeatedly told the court she was "guilty of saying it" and that she "said those words." The clear import of appellant's testimony, when taken as a whole, is that whatever she said about being a police officer, regardless of when, where, and how, she did so only in the context of

2. Appellant's brief includes the following statements relevant to this argument:
    (1) "[A]t the sentencing phase of the trial ... Appellant and the testimony of a witness continually undermined the propositions that 1) the Appellant had a mental state necessary for her to be guilty of a criminal act...." (Brief for Appellant at 6);
    (2) "Then Appellant in effect raised the defense of necessity or lack of criminal intent...." (Brief for Appellant at 7);
    (3) "Mr. Helm's testimony seems to raise the defenses of necessity and to cast grave doubt on whether Appellant possessed the necessary criminal mindset for her words to constitute a criminal act." (Brief for Appellant at 8); and
    (4) "[T]he undersigned counsel being of the earnest opinion that Appellant's plea was

not voluntary ... and that she possessed a mental state inconsistent with those required by the Penal Code to support a criminal conviction, he urges a reversal of judgment and a remand of this case to the trial court for further proceedings." (Brief for Appellant at 12).

3. Both indictments allege appellant committed the offense of impersonating a public servant "with intent to induce [the complainant] to submit to his (sic) pretended official authority." Because it is the defendant's intent that is at issue rather than the complainant's, and because appellant is a woman, I presume the reference to "his" pretended official authority is a typographical error that is meant to refer to appellant.

attempting to protect herself from being raped, not with criminal intent to induce another to submit to her pretended official authority. Clearly appellant did not literally intend to arrest anyone, for there is no suggestion she had the means to do so (her amateur "boxing training" notwithstanding). Instead, she "said those words" for their shock value—to allow her time to escape the motel room and to obtain the cooperation of the motel manager in ensuring her safety. From the context of her testimony, it is equally evident that at sentencing appellant thought she was guilty of the offense of impersonating a public servant merely because she said the words, "I am a police officer," regardless of any extenuating circumstances which could provide her with a valid defense.

I also disagree with the majority's alternative holding that appellant waived her *Moon* rights by failing to object at trial and by not requesting permission to withdraw her plea. Because the trial court was required to act sua sponte, the majority errs in imposing this preservation requirement. For its position, the majority cites *Williams v. State*, 10 S.W.3d 788 (Tex.App.—Waco 2000, pet. ref'd). In *Williams*, the Waco court recognized the general rule (although quoting the pre-*Moon* formulation) that "the trial court has a duty to *sua sponte* withdraw the defendant's guilty plea and enter a not guilty plea" when evidence is introduced which "reasonably and fairly raises [an] issue" concerning the defendant's innocence. *Id.* at 789. The court determined, however, that this rule was qualified by *Ibarra v. State*, 11 S.W.3d 189 (Tex.Crim.App.1999), *cert. denied*, 531 U.S. 828, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). In *Ibarra*, the court of

criminal appeals held that "[e]xcept for complaints involving fundamental constitutional systemic requirements ... all other complaints ... are waived by failure to comply with Rule 33.1." *Id.* at 197. The Waco court concluded that because the defendant had failed to object to the trial court's failure to sua sponte withdraw his plea, the issue was waived.

The Waco court's opinion is logically flawed. Inherent in any requirement for the trial court to act sua sponte is the assumption that the parties will not have made any such request to the court. If the defendant "objected" to the trial court's failure to raise the matter itself, then the issue would not be raised "sua sponte." It is precisely because the defendant has failed to raise the issue that an independent duty rests with the trial court to reject the defendant's plea on the court's own motion. The *Williams* waiver rationale would eviscerate the longstanding rule in *Moon*. My research reveals no other court which has followed *Williams*, and I would decline to do so in this case.[4]

Additionally, I would reject the State's contention that appellant did no more than "tend" to raise evidence of a defensive issue. The State, unlike the majority, does not contest that appellant raised defensive evidence (in either case). Rather, the State argues that *Griffin* requires appellant to have done something more than merely raise "evidence of a defensive theory." This is a misreading of *Griffin*. The distinction made in *Griffin*, and similar cases, is whether the evidence "tends" to raise a defensive issue or whether it "reasonably and fairly" raises the issue. *See Griffin*, 703 S.W.2d at 195; *see also Reyna v. State*, 434 S.W.2d 362, 365 (Tex.Crim.

4. The majority also cites *Capistran v. State*, 759 S.W.2d 121, 124 (Tex.Crim.App. [Panel Op.] 1982). *Capistran* stands for the unremarkable proposition that an appellant cannot complain about invited error. *Capistran* did not involve a *Moon* situation and therefore has no relevance here.

App.1968); *Jones v.. State,* 634 S.W.2d 61, 62 (Tex.App.—Fort Worth 1982, pet. ref'd). *Griffin* does not suggest that a defendant must do anything more than reasonably and fairly raise evidence of a defensive issue.

I also cannot accept the State's position that the visiting judge's comment, "You've already pled guilty. I can't find you not guilty," can be read to mean anything other than he mistakenly believed he lacked the power to find appellant not guilty. The State contends the comment should be interpreted to mean that the judge refused to find appellant not guilty because he did not believe her. The State's construction is an outcome oriented reading of the record which ignores the context of the statement. The record reveals that after a series of short answers in response to her attorney's questions, appellant was asked an open-ended question regarding whether she had anything else to tell the judge. She responded with a lengthy narrative answer. As appellant continued to testify to facts raising defensive issues, rather than admitting her guilt, the judge interjected, "You've already pled guilty. I can't find you not guilty." Then, after appellant stated she was "guilty of saying it," the judge stated, "I'm just trying to decide what I should do to you."

The obvious import of the judge's comments at that juncture of the proceedings was to emphasize to appellant that she was wasting time attempting to exonerate herself because the judge believed the issue of guilt had already been determined, he lacked the power to determine she was not guilty, and his only job was to determine sentencing. Had the visiting judge been making a guilt-innocence determination, there would have been no reason to preface his finding with the statement, "You've already pled guilty," nor would he have used the word "can't," or said "I'm *just*

trying to decide what I should do to you." Indeed, there would have been no reason for him to have made any of these comments before the evidence was concluded. Had the visiting judge intended to consider appellant's testimony for the purposes of determining her guilt, it seems unlikely he would have made a finding of guilt *before* appellant concluded her testimony, or called her second witness, or that he would have pronounced sentence in open court without adjudicating appellant after both sides closed. Rather, the judge proceeded with the hearing as if no guilt determination was necessary and never adjudicated her on the record. Appellant was not adjudicated until written judgments were signed after the punishment hearing was concluded. The judge's choice of words and the sequence of events that transpired can be logically explained only by concluding the visiting judge erroneously believed appellant already had been adjudicated guilty and he had no power to decide otherwise. In context, the judge's comments cannot fairly be construed as a *Moon* determination of appellant's guilt or innocence.

I also note that it is unimportant that evidence of appellant's innocence was first raised at punishment. *See Sommer v. State,* 574 S.W.2d 548, 549 (Tex.Crim.App. 1978); *Sullivan v. State,* 573 S.W.2d 1, 4 (Tex.Crim.App.1978); *Moon,* 572 S.W.2d at 682–687 (appendix to op. on reh'g). In each of these cases, *Sommer, Sullivan,* and *Moon,* Judge Roberts asserted in a concurrence that because evidence of the defendant's innocence first surfaced at sentencing, he would hold that "the issue was raised too late to require the judge to withdraw appellant's plea." *See Moon,* 572 S.W.2d at 688 (Roberts, J., concurring); *see also Sommer,* 574 S.W.2d. at 549 (Roberts, J., concurring); *Sullivan,* 573 S.W.2d at 4 (Roberts, J., concurring). The majority of the court of criminal appeals,

however, consistently declined to adopt this rationale. Thus, in all three cases, the trial court was obligated to make a guilt-innocence determination even though: (1) the trial court was not required to withdraw the plea; (2) the defendant had been adjudicated guilty or the plea had been taken under advisement; and (3) evidence of innocence did not arise until sentencing.

In summary, I would conclude that no matter how inarticulate appellant may have been and regardless how imprecise her brief is on appeal, appellant told the trial judge as plainly as she was able that despite her plea she was not guilty, she had defenses to the State's charges. At that point it was the trial judge's responsibility to halt the proceedings—to stop the conveyor belt—and assure himself that if appellant was convicted it was because she was guilty, not because of inertia. Instead, the visiting judge mechanically proceeded with sentencing, believing sentencing was his only purpose for taking the bench that day. As judges, we cannot allow ourselves to be so mired in the day-to-day business of judging that we forget that deprivation of individual liberty is never routine. The law rightly charges the trial judge with responsibility to act sua sponte when an issue arises as to the defendant's guilt, for the judiciary stands as the final bulwark against the potential for oppressive prosecution. A trial judge is possessed of no greater trust than ensuring that the innocent are not imprisoned. After reviewing the record, I am left with the definite and firm conviction that this trust was abrogated here. I would hold that under the totality of the circumstances, appellant reasonably and fairly raised an issue as to her guilt and the trial court erred in failing to discharge its responsibility under *Moon*.

Finally, I cannot conclude that the error was harmless.[5] Nonconstitutional error may be disregarded only if it does not affect the appellant's substantial rights. *See* Tex.R.App. P. 44.2(b). A substantial right is affected when the error has a substantial and injurious effect or influence in determining the verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim. App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Stated another way, the error must have affected the outcome of the lower court proceedings. *Sanford v. State*, 21 S.W.3d 337, 345 (Tex.App.—El Paso 2000, no pet.). If we have grave doubts about its effect on the outcome, or if we find that it had more than a slight influence, we must conclude that the error was such as to require a new trial. *McGowen v. State*, 25 S.W.3d 741, 745 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *O'Neal v. McAninch*, 513 U.S. 432, 435–38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).

The evidence adduced at punishment raised factual issues as to appellant's guilt and as to the voluntariness of her pleas. The trial court proceeded to punishment under the erroneous impression that appellant had been adjudicated guilty, and the court did not consider whether appellant should be found not guilty. This leaves me with grave doubts as to whether the outcome was affected by the trial court's error. I cannot say that the out-

---

5. My research reveals no cases addressing whether the error here constitutes "structural constitutional error" so as to be immune from a harm analysis. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997). By the same token, there is no authority addressing whether the appropriate harm analysis, if necessary, is that under appellate rule 44.2(a) or 44.2(b). Therefore, out of an abundance of caution, I utilize the more stringent standard for reversal provided by rule 44.2(b). Obviously, I would reach the same result if I utilized the less stringent standard in appellate rule 44.2(a).

come would have been the same had the trial judge realized he was empowered to find appellant not guilty or guilty of a lesser offense. Accordingly, I cannot conclude the error was harmless.

Therefore, I would sustain appellant's first point of error and remand the cause for further proceedings. Because my disposition of appellant's first point would dispose of the appeal, it would not be necessary to address appellant's ineffective assistance point. *See* Tex.R.App. P. 47.1.