# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00566-CR

**Thomas Redden, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-05-205224, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Thomas Redden appeals his conviction for the offense of impersonating a public servant. *See* Tex. Penal Code Ann. § 37.11 (West 2003). Appellant raises five points of error on appeal. Appellant contends that the trial court erred by denying his motion for directed verdict, allowing the state to introduce extraneous offense evidence during the State's case-in-chief, and failing to include a "necessity" instruction in the jury charge. Alternatively, appellant contends that his counsel was ineffective by failing to object to the extraneous offense evidence and by not requesting a jury instruction on "necessity." For the reasons that follow, we overrule appellant's points of error and affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of October 9, 2005, Richard Trautman, appellant's roommate at the time, drove appellant to downtown Austin, dropped appellant off, and waited in his car for appellant.

After getting out of Trautman's car, appellant made contact with Roberto Wells, an individual who frequented the downtown area. What transpired between appellant and Wells is disputed but, after appellant returned to Trautman's car, he was arrested for impersonating a police officer and for theft. Two police officers, Joseph Harris and Lonnie Gall, witnessed appellant holding Wells in a classic "arrest" pose—against a car with Wells's legs and arms spread and hands flat on the car, overheard appellant tell Wells that he was an undercover narcotics officer and that Wells was under arrest, and saw appellant searching Wells's pockets. Officer Gall saw appellant pull out a "hand full of cash" from one of Wells's pockets.

At a jury trial, the jury heard different versions of the events of that day. The State called three witnesses—Officer Gall, Officer Harris, and Trautman. Officer Gall observed appellant and Wells "in a huddle" before appellant "grabbed Mr. Wells and slammed him against the hood of the car." Both officers testified that they were on bike patrol when they observed appellant holding Wells against the car telling Wells that he was a narcotics officer and that Wells was under arrest. The officers confronted appellant, and he repeated to them that he was a narcotics officer and asked for Officer Gall's hinge cuffs. Appellant then ran to Trautman's car, telling Trautman to "go, go, go." After appellant returned to Trautman's car, Officer Gall detained Trautman and appellant at gunpoint, conducted a search, and recovered four dollars in cash, which he gave to Wells. Trautman testified that he did not go downtown to purchase drugs but to give appellant a ride and that he was waiting in the car for appellant when appellant ran to the car saying "throw me my handcuffs."

Appellant testified in his own defense. Appellant contended that he and Trautman went downtown to purchase marihuana and that was why he made contact with Wells. He testified

2

that Wells left briefly and, when Wells returned and asked for appellant's money, Wells grabbed appellant's money and that they started struggling. Appellant testified, "I got scared at that point, and that's when I told him I was a—an undercover officer just so I could get away." Appellant stated that he did not know the police officers were there and did not have any contact or communications with the officers until after he "ran and jumped in [Trautman's] car." He denied telling the police officers directly that he was an officer or asking for handcuffs.

The jury found appellant guilty of impersonating a public servant but not guilty of theft. The court sentenced appellant to three years in the Texas Department of Criminal Justice Institutional Division. This appeal followed.

## ANALYSIS

### *Denial of Motion for Directed Verdict*

In his first point of error, appellant contends that the trial court erred in denying his motion for directed verdict because the State did not offer evidence during its case-in-chief that appellant was not a police officer to satisfy the "pretense" element of the offense. A person commits the offense of impersonating a public servant if he "impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended official acts." Tex. Penal Code Ann. § 37.11(a)(1). Appellant contends that because the State failed to offer proof that he was not a police officer, the trial court erred in denying his motion for directed verdict.

A challenge to the trial court's denial of a directed verdict is "in actuality a challenge to the sufficiency of the evidence to support the conviction." *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993) (quoting *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990)).

3

In reviewing the sufficiency of the evidence, an appellate court considers all the evidence, both the State's and the defense's, in the light most favorable to the verdict. *Id.* If the evidence is sufficient to sustain the conviction, the trial judge did not err in overruling a motion for directed verdict. *See id.*

The evidence at trial that appellant was not a police officer included the testimony from the officers that they did not recognize appellant as a police officer and that his conduct did not comport with standard undercover procedures. Officer Harris testified, "we're familiar with all officers that work in the downtown area" and that they would have been informed ahead of time of "any type of undercover operations, plain clothes operation, undercover narcotics purchases" for interference and safety reasons. Officer Gall testified that he was familiar with most officers that work in the downtown area and that appellant's conduct made him suspicious and did not comport with standard procedures:

> Q. Okay. And was there anything else about what he was doing that made you suspicious that he was not a police officer?
>
> A. The way the undercover officers work you'll have an undercover officer and there's an officer who is also [an] undercover officer, who is called a close cover. . . . And it's almost never happens that the actual person who's buying, the officer who's actually buying the crack, is making the arrest. . . .
>
> Q. So there was no close cover officer approaching the scene.
>
> A. No, ma'am.
>
> Q. And it would be out of standard procedure for someone who is just participating in the deal to make an arrest—
>
> A. Yes, ma'am.

Appellant also testified that he was not a police officer, "I mean, I could tell they were mad that I wasn't an officer." We conclude the evidence was sufficient to support that appellant was not a police officer and to satisfy the "pretense" element. We overrule appellant's first point of error.

***Admission of Extraneous Evidence***

In appellant's second point of error, appellant complains that the trial court should not have admitted Trautman's testimony during the State's case-in-chief that appellant and his brother had "jacked" people around in the past. Alternatively, in his third point of error, appellant contends that his counsel was ineffective because he did not object to this testimony. He urges that the evidence was inadmissible as extraneous offense evidence used as character evidence. *See* Tex. R. Evid. 404(b); *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).[1]

The issue arose at trial when defense counsel asked Trautman during cross-examination, "Did [appellant] make any reference to planning to jack somebody for their money or anything like that?" Prior to redirect testimony, the State asked for a bench conference and, in the conference, argued to the trial court that defense counsel's question opened the door for the State to ask Trautman about statements appellant had made to Trautman that appellant had "jacked" people around in the past. The court asked defense counsel, "Then [the State] can inquire into [the question] upon redirect?" Defense counsel responded, "I suppose." The State during redirect then asked Trautman the following questions without objection:

---

[1] Appellant also contends the testimony was inadmissible because it was hearsay, irrelevant, uncorroborated accomplice testimony, and its probative value was substantially outweighed by its prejudicial effect. *See* Tex. R. Evid. 402, 403, 802; Tex. Code Crim Proc. Ann. art. 38.14 (West 2005).

Q. On cross-examination, defense counsel asked you if that night the defendant had mentioned jacking anybody, and you said no.

A. That is correct.

Q. Okay. He didn't mention anything about it that night.

A. That is correct.

Q. During your tenure of living with him, he'd ever—had he ever said anything about jacking people before?

A. Well, when I first moved in there, his brother was moving out as I was moving in, and you know, everyone was sitting down, having a few beers or whatever. Doing what guys do, talk and stuff about how they used to play cop, you know, and be, I guess jack people up or what have you, you know. And how long ago that was I don't know. It could have been drinking so [sic].

Because appellant did not object and obtain a ruling, he failed to preserve error on appeal. *See* Tex. R. App. P. 33.1(a). We overrule appellant's second point of error and turn to his alternative claim that his counsel was ineffective by failing to object to the questions.

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective assistance, an appellant must, by a preponderance of the evidence, prove that (i) trial counsel's performance fell below an objective standard of reasonableness, and (ii) counsel's deficient performance prejudiced appellant's defense. *Strickland*, 466 U.S. at 687-88; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To show prejudice, an appellant must show "a reasonable probability that, but for his counsel's unprofessional errors, the results of the proceeding

6

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 687.

We conclude that even if counsel's conduct was deficient in failing to object to the questions on "jacking" people, appellant has failed to show that the isolated testimony from Trautman prejudiced appellant's defense.[2] Appellant has failed to show that but for the admission of this testimony, the results of the proceeding would have been different. On recross examination, Trautman stated that he did not know if appellant actually had ever committed such an act and that he did not have any reason to believe that appellant intended to "jack" someone the night of the incident:

> Q. So as far as you know when—when [appellant] said something to you about jacking people, he was talking about something he'd done when he was a kid, years ago; correct?
>
> A. Like I said, I have no idea when it was. He and his brother were just talking old memories, so I assumed it was in the past.
>
> Q. You don't have any reason to think at all that that's what he intended to do when he went [downtown] that night.
>
> A. No. . . .
>
> Q. As far as you know he never actually did anything like this, just sort of drinking and bragging with his brother?
>
> A. Yes, as far as I know. Yes.

---

[2] Appellant cites *Brown v. State*, 974 S.W.2d 289 (Tex. App.—San Antonio 1998, pet. ref'd), to support that his counsel was ineffective for allowing the admission of extraneous offense evidence. The court in *Brown* stated that defense counsel is ineffective "when counsel fails to object to *numerous* extraneous and prejudicial matters." *Id*. at 293 (emphasis added). Appellant in contrast complains of one series of questions.

Appellant also denied making the statement to Trautman, and the jury found appellant not guilty of theft. We overrule appellant's third point of error.

*Failure to Include "Necessity" Instruction*

In his fourth point of error, appellant contends that the trial court erred in not including an instruction in the charge on the defense of necessity.[3] Alternatively, appellant contends that his counsel was ineffective because his counsel did not request an instruction on the defense of necessity. According to appellant, Wells was attempting to steal appellant's money, a struggle ensued and, when appellant became afraid for his life, he told Wells that he was an officer. Appellant urges that by "his pretense," his conduct was justified—he "used less physical force than he was entitled to use, and a potentially deadly situation was avoided." He argues that he could have arrested Wells or used the threat of deadly force—"taking out a gun and pointing it at the thief"—to recover the four dollars that Wells took from him. *See* Tex. Code Crim. Proc. Ann. art. 18.16 (West 2005); Tex. Penal Code Ann. §§ 9.04, .42 (West 2003).

---

[3] Section 9.22 of the penal code sets out the elements for the defense of necessity:

Conduct is justified if:

  (1)    the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

  (2)    the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

  (3)    a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22 (West 2003).

A trial court is required to submit a jury charge that sets out the law "applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). A trial court, however, does not have a duty to *sua sponte* instruct the jury on defensive issues. *See Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (article 36.14 does not impose a "duty on trial courts to *sua sponte* instruct the jury on unrequested defensive issues"); *see also Delgado v. State*, 235 S.W.3d 244, 249-50 (Tex. Crim. App. 2007) (court draws distinction between absolute duty to set out law applicable to specific offense charged and defensive issues); *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999) (necessity is defensive issue). Because appellant did not request an instruction on necessity, the trial court did not have a duty to include one in the charge. *See Posey*, 966 S.W.2d at 62. We overrule appellant's fourth point of error and turn to his alternative claim that his counsel was ineffective because he did not request an instruction on necessity.

Appellant contends that his counsel should have requested an instruction on the defense of necessity because appellant admitted to uttering the "fictitious phrase." A necessity instruction is appropriate when the defendant's defensive evidence essentially admits to every element of the offense, but "interposes the justification to excuse otherwise criminal conduct." *Shaw v. State*, No. PD-0211-06, 2007 Tex. Crim. App. LEXIS 1479, at *30 (Tex. Crim. App. Oct. 31, 2007); *see also Young*, 991 S.W.2d at 838; *Aldrich v. State*, 53 S.W.3d 460, 468 (Tex. App.—Dallas 2001), *aff'd*, 104 S.W.3d 890 (Tex. Crim. App. 2003).

*Aldrich*, a case with similar facts, is instructive. 53 S.W.3d at 468. The defendant was charged with impersonating a public servant. *Id*. She admitted that she said she was a peace officer, but denied telling anyone to "turn around and place their hands behind their back." *Id*.

9

Because the indictment alleged the defendant impersonated a peace officer by demanding an individual "turn around and be arrested," the court concluded that she did not admit to the alleged conduct in the indictment and did not raise the issue of necessity. *Id.* Appellant's alleged conduct in the indictment was that appellant impersonated a police officer to perform an unlawful search and detention on Wells:

> . . . [appellant] did then and there impersonate a peace officer with intent to induce Roberts Wells, Jr. to submit to the pretended official authority of [appellant] or to rely on the pretended official acts of [appellant] by having Roberts Wells, Jr. submit to an unlawful search and detention, . . .

Although he admitted that he told Wells he was an officer, appellant did not admit to the conduct charged in the indictment. He specifically denied that his intentions were to have Wells "submit to an unlawful search and detention" or that he searched Wells. Because appellant not only did not admit, but specifically denied, committing the offense as alleged in the indictment, he was not entitled to an instruction on the defense of necessity, and defense counsel was not deficient by failing to request such an instruction. *See id.* at 469-70.

We also conclude that appellant failed to show that the failure to request an instruction on necessity prejudiced appellant's defense. *See Strickland*, 466 U.S. at 687-88; *Bone*, 77 S.W.3d at 833. An instruction on necessity would have included the statutory elements that a person must reasonably believe that his conduct was "immediately necessary to avoid imminent harm" and "avoiding the harm clearly outweigh[ed], according to the ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." *See* Tex. Penal Code Ann. § 9.22 (West 2003). Appellant testified that there were people nearby. He had readily

10

available options other than impersonating a police officer; he could have sought assistance or called out for help.  A reasonable juror would be unlikely to decide that the harm appellant sought to avoid, the loss of his four dollars, outweighed the harm sought to be prevented by the prohibition against impersonating public servants—the loss of public trust in law enforcement.  *See Dietz v. State*, 62 S.W.3d 335, 340 (Tex. App.—Austin 2001, pet. ref'd).  We overrule appellant's fifth point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   February 21, 2008

Do Not Publish