James Wesley THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 1145–83.

Court of Criminal Appeals of Texas, En Banc.

Oct. 24, 1984.

Bill Roberts, Dallas, for appellant.

Henry Wade, Dist. Atty., Anne B. Wetherholt, Knox Fitzpatrick and Bob Phillips, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated robbery. After the jury found appellant guilty, the court assessed punishment at 99 years. The conviction was reversed by the Court of Appeals for the Fifth Supreme Judicial District in *Thomas v. State*, 662 S.W.2d 677 (Tex.App.—Dallas 1983). We granted the State's petition for discretionary review in order to examine the Court of Appeals' holding that the trial court erred in refusing a requested charge on the defense of necessity.

Dallas Police Officer David Mendenhall testified that while he was on patrol in the Washington Street housing project in Dallas on January 17, 1975, he observed two vehicles parked illegally in an alleyway. Mendenhall, who was in uniform and driving a marked police car, asked appellant to move one of the vehicles. Appellant drove off, but returned and parked behind the officer in the alley. Mendenhall again asked appellant to move but appellant refused. When asked for his driver's license, appellant responded that he did not have one, and Mendenhall told appellant he was under arrest for driving without a license. Upon frisking appellant Mendenhall discovered and confiscated an illegal knife. Appellant resisted being handcuffed, struggled with the officer, and yelled to a bystander, "Go get Leroy." Leroy Thomas, appellant's brother, appeared and jumped on the officer. A lengthy fight ensued between Mendenhall, appellant and Leroy during which Mendenhall felt a hand reaching for his gun and Mendenhall drew it, firing a shot into the ground, hoping to attract attention. As Mendenhall wrestled with appellant and his brother, an unknown third man struck the officer over the head with a beer bottle, causing heavy bleeding. Mendenhall heard someone yell "get the shotgun" and then was hit over the head with a shotgun stock, which cracked on impact. As he slipped into unconsciousness, Mendenhall felt his pistol being taken from him and saw it pointed in his face. When he came to, he radioed for help, and it was later discovered that his pistol, flashlight, and shotgun were missing. Mendenhall's skull was cracked in two places, and he received over a hundred stitches for his wounds.

A resident of the housing project witnessed appellant fighting with Mendenhall, heard appellant say "I'm going to kill this m_____ f_____," and saw appellant strike Mendenhall on the head with a shotgun.

Officer Mendenhall's pistol and flashlight were recovered from a nearby residence where appellant and his brother were found hiding. The officer's shotgun was not found. A different shotgun barrel was found elsewhere in the project, and fragments of the stock were found at the scene of the struggle.

Appellant testified but did not explicitly deny or affirm moving his truck and parking it behind the police car. He did, however, dispute the rest of Mendenhall's testimony.

According to appellant, the altercation occurred when Mendenhall, without provocation, hit appellant in the head. Shortly thereafter, Mendenhall drew his gun and appellant and his brother struggled to take it.

Appellant testified that he and his brother struggled for the gun because he thought Mendenhall was trying to shoot him with it. After his brother got the pistol away from Mendenhall, he and his brother went inside. He testified that they took the gun only to "[k]eep from getting shot with it," and that he did not intend to steal it or "appropriate it to [my] own use." He denied hitting Mendenhall with a shotgun, or taking the officer's shotgun. It is this testimony which appellant asserts, and the Court of Appeals agrees, entitled appel-

lant to a jury instruction on the defense of necessity.

V.T.C.A. Penal Code, Sec. 9.22, provides as follows:

"Sec. 9.22. Necessity

"Conduct is justified if:

"(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

"(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law prescribing the conduct; and

"(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear."

The indictment charged appellant with intentionally threatening and placing Mendenhall in fear of imminent bodily injury by using and exhibiting a shotgun, in the course of committing theft and with the intent to obtain and maintain control of Mendenhall's property, said property being one pistol and one shotgun.

Appellant denied taking or exhibiting the shotgun. His theory in advancing the necessity defense was that he did not commit the underlying theft and hence could not have committed aggravated robbery which requires an underlying theft.

The Court of Appeals assumed in reaching its decision that the testimony establishing appellant's provocation of the fight was undisputed. The court held, however, that even an accused who provokes a difficulty is entitled to the necessity defense if raised by the evidence. In the instant case, the court found that appellant raised the evidence when he testified to taking Mendenhall's gun in order to avoid being shot.

We need not reach the issue of the necessity defense's availability to one who provokes a difficulty since, as our recitation of the facts above makes clear, appellant denied provoking the difficulty. While it is true that appellant did not deny driving his truck around the block and parking it be-

hind Mendenhall, such behavior on his part would not have amounted to provocation justifying Mendenhall's drawing of a weapon.

■ According to appellant's testimony, Mendenhall attacked him and drew a gun for no apparent reason, forcing appellant to take and hide the gun in order to save his life. It is clear that appellant's testimony raised the issue of necessity since the harm he testified to was imminent, the desirability of avoiding death or injury outweighed the harm that would have been caused by theft of Mendenhall's gun, and there is no indication of a legislative purpose to exclude the justification in the circumstances outlined in *appellant's testimony.*

■ It is axiomatic that a defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Williams v. State,* 630 S.W.2d 640 (Tex.Cr.App.1982); *Warren v. State,* 565 S.W.2d 931 (Tex.Cr.App.1978).

The State contends that under *Green v. State,* 566 S.W.2d 578 (Tex.Cr.App.1978) appellant was not entitled to a charge on necessity. In *Green v. State,* supra, at 584, we stated:

"... The denial of a defendant's requested instruction is not error where the requested instruction is merely an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case ..."

According to the State, appellant did not raise the necessity defense because he testified that he had no intent to appropriate to his own use or steal Mendenhall's gun, thus denying the intent element of the underlying theft offense: "Since necessity

... is a defense which justifies the commission of an offense which the accused admits committing, and since Appellant *denied the intent* to deprive the owner of the property, an essential element of the charged offense of aggravated robbery, he was not entitled to an instruction on necessity."

The State's argument must fail, however, because appellant relied on more than one defensive theory, which he was entitled to do.

Appellant repeatedly admitted taking Mendenhall's gun and hiding it from the officer so that he could not retrieve it. Appellant's testimony that he did not intend to "steal" the gun perhaps indicated a lack of intent to "deprive" as that term is defined in V.T.C.A. Penal Code, Sec. 31.-01(3)(A): "to withhold property from the owner permanently or for so an extended period of time that a major portion of the value or enjoyment of the property is lost to the owner." But his entire testimony made clear that he could have been guilty of an intent to "deprive" as that term is defined in Sec. 31.01(3)(C), supra: "to dispose of property in a manner that makes recovery of the property by the owner unlikely." The jury was charged on this latter definition of "deprive" as well as on that definition found in Sec. 31.01(3)(A), supra.

Appellant was entitled to have the jury consider the necessity defense even though a portion of his testimony can be interpreted as denying the "intent to deprive" element of the underlying theft. The Court of Appeals correctly noted the State's failure to recognize that alternative defenses are proper. As we stated in *Lugo v. State*, 667 S.W.2d 144, 146 (Tex.Cr.App.1984), "It has long been recognized in Texas that a defendant is entitled to a charge on a defensive theory regardless of whether the evidence supporting the defensive theory is contradicted."

The judgment of the Court of Appeals is affirmed.