**George W. DARTY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–98–00402–CR.**

Court of Appeals of Texas, San Antonio.

April 14, 1999.

---

6. Tex.Penal Code Ann.Sec. 49.04(a) (Vernon 1999).

7. Tex. Transportation Code Ann. § 724.015 (Vernon pamp.1999).

Suzanne M. Kramer, San Antonio, for appellant.

Matthew W. Paul, State's Pros. Atty., Betty Marshall, Asst. State Pros. Atty., Austin, Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before TOM RICKHOFF and ALMA L. LÓPEZ, Justice.

## OPINION

LOPEZ, Justice.

This case concerns the conflicting testimony of two witnesses: a police officer and an African American defendant accused of resisting arrest. The question before the Court is whether the trial court erred in refusing appellant's requested charge on necessity. For the reasons stated in this opinion, we reverse and remand.

## STATEMENT OF FACTS

The jury heard only two witnesses in this trial. The State introduced its evidence through the arresting officer and the defendant took the stand in his own behalf.

### A. The State's Version

The jury heard that on July 1, 1997, at approximately 1:24 a.m., George Darty was under observation for suspicious behavior by San Antonio police officer, Michael Katzfey. He situated his patrol car across the street from an Albertson's parking lot which also was a location for a Goodwill Collection Center near Darty's home. He saw Darty park, move some articles from his trunk to the collection bin, and drive away. Officer Katzfey followed Darty to his apartment complex, and, having noted Darty's failure to use a turn signal, activated his blue and red overhead flashing lights. Darty got out of his car, and asked why Katzfey was bothering or harassing him. Katzfey told Darty he stopped him for a traffic violation and requested that Darty produce his license and proof of insurance four times. Darty refused to produce them each time. Katzfey placed Darty under arrest for failing to produce his driver's license, and the appellant began to struggle. At this point, Katzfey radioed for cover, tried to handcuff Darty, and struck Darty twice with a flashlight on his shoulder blade in order to promote compliance with the arrest. Katzfey testified that Darty kicked him during the scuffle.

### B. The Appellant's Version

Darty, a computer repairman, testified that he was placing spare, used computer parts in the Goodwill collection bin on his way home after completing a 10:00 p.m. service call. He stated he was aware of Officer Katzfey's presence,[1] and consciously tried to finish this task and carefully drive home to avoid any incident with

---

1. Darty and Officer Katzfey had previously made contact on two prior occasions, both resulting in Darty's arrest for outstanding traffic violations. Darty testified Katzfey had threatened him, stating, "If I ever catch you out on the street between 10:00 and 6:00, I will arrest you, even if it's a busted light, look at me wrong, no matter what, . . ." The two witnesses gave conflicting testimony as to whether Officer Katzfey had called Darty "a damn nigger," a disparaging reference to Darty's ethnicity during these contacts. Darty testified that he had filed complaints with the department of internal affairs alleging that Officer Katzfey had harassed him.

Katzfey. Darty denied failing to use a turn signal, stating, he knew he was being followed and was very conscious of obeying all traffic laws in that situation. After they parked, Katzfey approached Darty with his large flashlight, holding it in a weapon-like manner. The altercation came about after Darty offered to produce and was reaching into his car to retrieve his driver's license and proof of insurance. Darty testified that Katzfey was intent on "bouncing him around;" that Katzfey threw him on his neighbor's car, beat him six times with his flashlight, and put him in a chokehold so that he could not breathe. Darty denied that he had kicked Katzfey, but did admit he used some force to free himself from a chokehold.

Darty denied that he committed the offense of resisting arrest stating that he was not told that he was under arrest until after he was hand-cuffed. His counsel requested a charge on necessity and a charge on self-defense. The trial court granted the self-defense charge and denied the necessity charge. The jury returned a verdict of guilty on the offense of resisting arrest. Darty was fined three hundred dollars, court costs, and ordered to serve sixty days in the Bexar County Adult Detention Center, which was suspended and probated for a period of one year.

### Charge Error

■■■ Upon a timely request, a defendant has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, regardless of what the trial court may or may not think about the credibility of this evidence. *See Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim.App.1996); *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App.1991). A charge on a defensive issue is required if the accused presents affirmative evidence that would constitute a defense to the crime charged and a jury charge is properly requested. *See Miller*, 815 S.W.2d at 585. In fact, the trial court must grant the defendant an instruction regardless of whether the issue is raised by the defendant's testimony alone or otherwise. *See id.* If a defendant produces evidence raising each element of a requested defensive instruction, he is entitled to the instruction regardless of the source and strength of the evidence. *See Hamel,* 916 S.W.2d at 493; *Brazelton v. State,* 947 S.W.2d 644, 646 (Tex.App.—Fort Worth 1997, no pet.). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993). Thus, if the issue is raised by any party, refusal to submit the requested instruction is an abuse of discretion. *See id.* When the evidence fails, however, to raise a defensive issue, the trial court commits no error in refusing a requested instruction. *See id.*

### The Defense of Necessity

■■■ Necessity is a statutory defense of justification. To determine whether the issue of necessity was raised, we must view the evidence in light of the statutory provision. The Texas Penal Code provides that the defense of necessity is available for criminal conduct only if (1) the defendant reasonably believes his conduct is immediately necessary to avoid imminent harm, (2) the desirability and urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the law prescribing the conduct, and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise appear. *See* TEX. PEN.CODE ANN. § 9.22 (Vernon 1994). In addition, "imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *See Smith v. State*, 874 S.W.2d 269 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). An "imminent harm" occurs when there is an emergency situation, and it is "immediately necessary" to avoid that harm when a split-second decision is re-

quired without time to consider the law. *See Garcia v. State*, 972 S.W.2d 848, 849 (Tex.App.—Beaumont 1998, no pet.). The general rule is that the use of force to resist arrest is not justified, even if the arrest is illegal. *See Garner v. State*, 858 S.W.2d 656, 661 (Tex.App.—Fort Worth, 1993, pet. ref'd). An exception to the rule exists when the peace officer uses or attempts to use greater force than necessary to make the arrest or search. In that situation, the actor may use only the degree of force immediately necessary to protect himself against the peace officer's use of greater force than necessary. *See* Tex. Penal Code Ann. § 9.31(c)(1) and (2) (Vernon 1994).

The first prong of the necessity defense requires affirmative evidence of imminent harm. Although the Appellant did not admit to the offense, he did testify that Katzfey's excessive force was preventing him from breathing. Darty testified that his behavior was necessary to avoid immediate harm from the unlawful use of excessive force inflicted on him by Katzfey. This would satisfy the first requirement. The second element is supported by evidence of one's inherent need to breathe. The desirability and urgency of not being able to breathe due to the alleged chokehold that Katzfey had on him outweighs the harm in Darty kicking at or using his own arm to force Katzfey to release the hold. The third requirement of Section 9.22, that there be no legislative purpose to exclude the justification, is satisfied by the use of unnecessary force exception.

The State argues that Darty is not entitled to an instruction on necessity because he did not admit to the charge of resisting arrest. *See Maldonado v. State*, 902 S.W.2d 708 (Tex.App.—El Paso 1995, no pet.). We acknowledge this basic premise when considering the defense of necessity. *See e.g., Huizar v. State*, 720 S.W.2d 651, 654 (Tex.App.—San Antonio 1987, pet. ref'd) (no evidence that appellant shot and killed victim believing he had to do so to avoid imminent harm to himself or his son).

In *Maldonado*, Chief Justice Barajas succinctly lays out the elements and burdens associated with this defense in a resisting arrest case. The Chief Justice, however, particularly laments that the issue was inadequately briefed and therefore waived. Furthermore, he points to the lack of evidence due to the defendant's failure to testify. *See id* at 711–12; *see also Auston v. State*, 892 S.W.2d 141, 145 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (defendant failed to testify or offer any evidence as to state of mind). In this case, Darty testified at length as to what he experienced in terms of harassment and the use of undue force which he resisted before he was told he was under arrest. This testimony presented evidence of Darty's state of mind as to his reasonable belief that his conduct was immediately necessary to avoid imminent harm. He simply refused to define that conduct as resisting arrest because he stated he did not know that the officer was placing him under arrest at the time. He understood, instead, that the officer intended to physically and verbally harass him, not necessarily arrest him.

Darty stated more than once that he believed he was fighting for his life. If the defendant offers more than one defense, and there is evidence to support those defenses, then the defendant's denial of some element of the offense does not necessarily preclude a necessity charge, since the defendant is entitled to submission of every defensive issue raised by the evidence, even if inconsistent with other defenses. *See Thomas v. State*, 678 S.W.2d 82, 84–85 (Tex.Crim.App.1984).

The State also argues that Darty is not entitled to the instruction because he was responsible for putting himself in the position he now seeks to justify, citing to *Goodin v. State*, 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988, pet. ref'd). The State's rendition of the facts supporting this argument, however, relies totally on

the police officer's testimony and ignores Darty's version of the facts. If Darty's version is believed, and this totally is within the realm of the jury, not of the trial court or this Court, Darty's behavior did not amount to provocation of the incident. *See Thomas,* 678 S.W.2d at 84.

Failure to give a defensive instruction on an issue raised by the evidence, where the error is properly preserved, will call for reversal unless the error is harmless. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994). In this case, there were two conflicting versions of the facts, one version presented by the State and one presented by the defendant-appellant. All of the evidence boiled down to a swearing match between two witnesses. The appellant testified at length, raising more than one defensive issue. We find that there was some harm in the trial court's decision to deny the jury the opportunity to consider Darty's defense of necessity.

## CONCLUSION

The trial court erred in refusing appellant's requested charge on necessity. Appellant was harmed by this error and is entitled to a new trial. Accordingly, we reverse appellant's conviction and remand this case to the trial court for a new trial in accordance with this opinion.