COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-239-CR
 
LYDIA HERNANDEZ BOWEN                                                        
   APPELLANT
V.
THE STATE OF TEXAS                                                                   
STATE
------------
FROM THE COUNTY COURT AT LAW OF WISE COUNTY
------------
OPINION
------------
Appellant Lydia Hernandez Bowen
appeals her conviction for resisting arrest. In two points on appeal, she
contends that the trial court abused its discretion by failing to instruct the
jury on the necessity defense and that the trial court erred by denying her
motion for directed verdict on her self-defense claim. We affirm.
FACTUAL BACKGROUND
On January 26, 2001, Appellant was
arrested for disorderly conduct and public intoxication. She was arrested in the
front yard of her rural house by Deputy William D. Hamilton. Appellant and
Deputy Hamilton gave conflicting testimony concerning the arrest.(1)
Deputy Hamilton testified he was
dispatched to a disturbance at Appellant's residence and was warned by the
dispatcher that there was a possibility of weapons on the scene. The police
chief, state troopers, and other deputies were at the scene when he arrived, as
were about fifteen to twenty adults and several juveniles, most of whom were
Appellant's family members who lived nearby.
Deputy Hamilton described Appellant
as becoming very loud and belligerent about youths racing on the private road by
the property. Then she became upset with him. Although he warned Appellant to
watch her language, she continued shouting and using abusive language. Deputy
Hamilton could also smell such a strong odor of alcohol on Appellant's breath
that he performed the horizontal gaze nystagmus sobriety field test on her.
Deputy Hamilton then told Appellant and her husband that he was arresting both
of them for disorderly conduct. As he grabbed her right hand to place the cuffs
on her, she tried to pull away, stating she was not going to jail and was going
back to her house. Deputy Hamilton acknowledged that Appellant did not use any
force against him before he took her to the ground. Because he had been told
there were weapons at the scene, Deputy Hamilton said that he was concerned
Appellant could retrieve a weapon or barricade herself in the house.
Deputy Hamilton took Appellant to
the ground by kicking her feet out from underneath her as she tried to run
toward the house. With the assistance of a civilian officer, Deputy Hamilton
knelt beside Appellant and, with his knee in her back, secured the handcuffs
behind her back. He explained to her what was going on and gave her time to calm
down. He told her she was in custody and was going with him. When she calmed
down, he helped her to her knees, then to her feet, and walked her to the patrol
car, where she was ordered to sit in the rear passenger seat. Deputy Hamilton
testified that Appellant then again became belligerent, cursing and screaming,
and that she kicked him in the shin.
Appellant testified that Deputy
Hamilton was talking to her husband when she came out of the house. She
approached them and asked the officer what was going on. She had three wine
coolers that evening and did not feel she was intoxicated. No one asked her to
perform an HGN test. Appellant admitted that Deputy Hamilton told her she was
being arrested, but denied that he explained why. He grabbed her by the wrist,
turned her around, twisted her arm up behind her back, and placed the handcuffs
on one of her wrists. She took "a step" back toward her home,
struggled to turn, and asked why she was being arrested. Deputy Hamilton then
kicked her feet out from underneath her, and she landed on the ground. Deputy
Hamilton landed directly on top of her and then used his knees to pin her to the
ground. Two other officers assisted Deputy Hamilton, forcing Appellant's face
into the dirt, such that she had difficulty breathing. Appellant said she
struggled for air, screamed for help, and that she was hurting.
Under Appellant's version, once the
officers restrained her in handcuffs, they lifted her directly from the ground
to her feet, using only the handcuffs and her forearms. Appellant thought she
felt her arm pop out of its socket. According to Appellant, she then began
kicking and struggling to regain her balance and to stop the officers from
hurting her, and in the process, she kicked Deputy Hamilton. Appellant stated
the kicking occurred when Deputy Hamilton was lifting her up, not after they had
walked her to the car. Appellant was charged by information and complaint with
resisting arrest, search, or transport by using force against a peace officer.
Appellant pleaded not guilty and was tried by a jury, which found her guilty as
charged. Appellant was sentenced to a fine of $500 by the court.
DISCUSSION
Necessity
In her first point, Appellant
claims that the trial court abused its discretion by denying her requested jury
instruction on the defense of necessity. See Tex. Penal Code Ann. §§
9.02, 9.22 (Vernon 2003). A defendant has the right to an instruction on a
defensive issue raised by the evidence, whether that evidence is weak or strong,
unimpeached or contradicted, and regardless of what the trial court may believe
about the credibility of the defense. Hamel v. State, 916 S.W.2d 491,
493 (Tex. Crim. App. 1996). A defendant's testimony alone may suffice to raise a
defensive issue requiring submission of an instruction on a defensive issue. Pennington
v. State, 54 S.W.3d 852, 856 (Tex. App.--Fort Worth 2001, pet. ref'd)
(citing Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1984)). We
view the evidence submitted in support of the defense in the light most
favorable to the defendant. Id.
Conduct that would otherwise be
criminal is justified by "necessity" if: (1) the actor reasonably
believes the conduct is immediately necessary to avoid imminent harm; (2) the
desirability and urgency of avoiding the harm clearly outweighs, under ordinary
standards of reasonableness, the harm sought to be prevented by the law
proscribing the conduct; and (3) a legislative purpose to exclude the
justification claimed for the conduct does not otherwise plainly appear. Tex.
Penal Code Ann. § 9.22. In addition, a judicially imposed predicate for
submission of necessity as a defense requires that a defendant first admit
commission of the offense before offering necessity as a justification. Young
v. State, 991 S.W.2d 835, 839 (Tex. Crim. App.) (holding necessity defense
not warranted where defendant denied both commission of offense and acts
alleged), cert. denied, 528 U.S. 1063 (1999); East v. State,
76 S.W.3d 736, 738 (Tex. App.--Waco 2002, no pet.) (noting all justification
defenses require admission of commission of the offense); Pennington, 54
S.W.3d at 856 (same); see also Maldonado v. State, 902 S.W.2d 708, 712
(Tex. App.--El Paso 1995, no pet.) (holding instruction on necessity not raised
where defendant claimed he was trying to prevent being shot when he struck
officer in face and wrested gun from another officer's holster).
In denying Appellant's requested
instruction, the trial court stated he did not feel that the facts of the case
raised the defense of necessity and that self-defense was the appropriate
defensive submission under the evidence involving force against a police
officer. Appellant responds to the trial court's reasoning by arguing that the
defense of necessity is available regardless of whether the alleged victim is a
police officer, noting that it has been found to be an appropriate submission in
cases involving resisting arrest. Appellant also argues that she was entitled to
the submission of the instruction on necessity as well as self-defense because
necessity has different elements and does not require that the officer first use
greater force than necessary before the defendant offers "resistance,"
as does the self-defense statute.
On appeal, the State argues that
the trial court properly refused the submission because Appellant failed to
satisfy the requirement imposed by case law that the defendant admit commission
of the offense in order to invoke the defense of necessity. While the cases
generally state that a defendant must admit committing the "offense,"
defendants have been held entitled to submission of a justification defense such
as necessity where they admit the conduct alleged even though they deny an
element of the offense such as intent. See, e.g., Vasquez v. State, 830
S.W.2d 948, 950 (Tex. Crim. App. 1992) (holding admission by felon of possession
of firearm sufficient admission of offense to require submission of necessity
defense where he stated he needed gun to escape after being kidnaped by gang
members); Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App. 1990)
(holding denial of knowledge that goods were stolen did not preclude submission
of justification defense of good faith purchase); Martinez v. State,
775 S.W.2d 645, 647 (Tex. Crim. App. 1989) (holding admission that defendant
held gun, had finger on trigger, and fired it sufficient for submission of
self-defense although he denied intent to kill).
Appellant admitted kicking or
hitting in the direction of the officers, including Deputy Hamilton, when she
was raised from the ground. She insisted, however, that she was hurting and that
she was only kicking and struggling to regain her balance. She admitted she was
trying to get the officers to stop what they were doing, but she denied
intentionally kicking at them to try to stop them from taking her to jail.
In response to the arguments of the
State as well as the reasoning of the trial court, Appellant relies on Darty
v. State, 994 S.W.2d 215, 218 (Tex. App.--San Antonio 1999, pet. ref'd),
which held that the trial court erred in failing to submit an instruction on
necessity, in addition to an instruction on self-defense, as justification for
the defendant's conduct in resisting arrest by allegedly kicking a police
officer. In that case, the defendant testified that, during a traffic stop, the
policeman threw him on his neighbor's car, beat him with his flashlight, and
placed him in a choke hold. Id. at 218. The defendant denied kicking
the officer, but admitted he used some force to escape the chokehold because he
could not breathe. Id. He denied resisting arrest, stating he was not
told he was under arrest until after the conduct occurred. Id.
Appellant points out that, in Darty, the court held that the defense of
necessity should have been submitted even though the defendant refused to admit
the offense of resisting arrest. Id. at 219.
As noted above, other case law has
recognized that, where the defendant admits the underlying conduct charged but
denies an element of the offense, he or she may still be entitled to the
submission of an instruction on a justification defense, including necessity,
even though they have not admitted committing the offense. Vasquez, 830
S.W.2d at 950; Willis, 790 S.W.2d at 314; Martinez, 775 S.W.2d
at 647. We believe, however, that those cases, including Darty,
specifically, are distinguishable.
First, in Darty, which is
the only case we have found allowing the defense of necessity to be submitted in
a case involving resisting arrest, the court found it significant that the
defendant testified to his belief that he was being subjected to undue force and
harassment by the officer, rather than an arrest, and that he testified he
resisted with force before he was told he was under arrest. Id.
The court noted that he had previous encounters with the same officer resulting
in charges of racial harassment. Id. at 220 & n.1. The court
concluded that the defendant may not have understood that he was being placed
under arrest and that his testimony presented evidence of his state of mind as
required to meet the first element of the necessity defense, i.e., "his
reasonable belief that his conduct was immediately necessary to avoid imminent
harm." Id. at 219.
Unlike the defendant in Darty,
Appellant knew before any force was used by the officer that she was being
placed under arrest. There was no basis in the record for her to believe
otherwise or for her to believe that anything else was occurring. She simply
denied that she "intentionally" resisted arrest, but was trying to
regain her balance and stop the officers from hurting her. Accepting Appellant's
argument would allow any person to obtain submission of a necessity defense
based upon a struggle involving use of force against a police officer when that
person knows they are being placed under arrest, by later claiming he or she was
only trying to avoid being hurt.
In contrast to Darty, we
note that the El Paso Court of Appeals held in Maldonado that the
defense of necessity was properly refused where the evidence established that
the defendant fled from a scene known for drug activity upon arrival of a police
officer patrolling the area; knocked the officer down during the chase;
struggled with two officers after he was tackled, grabbing both officers' guns
from their holsters in the process; and even pulled the trigger of the second
gun, which failed to fire. 902 S.W.2d at 712. Rejecting the argument that the
evidence raised a reasonable inference that the defendant was attempting to
avoid being shot, the court noted that the appellant did not admit conduct and,
indeed, did not testify, and the court held that one who unlawfully avoids
police detention cannot later claim that his criminal conduct was necessary in
response to police efforts spawned by his illicit flight. Id. In
holding that the necessity defense was properly refused, the court stated,
"We decline to hold that every defendant who physically resists detention
or arrest is entitled to an instruction on the issue of necessity simply because
he resists." Id.
We agree with Appellant that she
sufficiently met the judicially imposed requirement of admitting commission of
the alleged offense of resisting arrest by admitting the alleged act of kicking
the officer even though she denied her intent to resist arrest by that conduct.
However, we do not believe that this admission entitles her to submission of the
necessity defense under the facts of this case.
"The plain language codifying
the necessity defense evinces a legislative intent that the defense apply to all
offenses unless the legislature has specifically excluded it from them." Spakes
v. State, 913 S.W.2d 597, 598 (Tex. Crim. App. 1996); see Tex.
Penal Code Ann. § 9.22(3) (listing requirement that "a legislative purpose
to exclude the justification claimed for the conduct does not otherwise plainly
appear"). We believe that a legislative purpose to exclude the defense of
necessity except under certain narrow circumstances does plainly appear in
section 9.31 of the penal code, which states that use of force against another
is not justified "to resist an arrest or search that the actor knows is
being made by a peace officer . . . even though the arrest or search is
unlawful," except in one limited circumstance, where excessive force by the
officer is first used. Tex. Penal Code Ann. § 9.31(b) (Vernon 2003). That
statute states in pertinent part:

        
 (b) The use of force against another is not justified:
        
 . . . .
 
        
 (2) to resist an arrest or search that the actor knows is being made by a
 peace officer . . . even though the arrest or search is unlawful, unless the
 resistance is justified under Subsection (c);
 . . . .
 
   
      (c) The use of force to resist an arrest or search is
 justified:
 
 
         (1) if,
 before the actor offers any resistance, the peace officer . . . uses or
 attempts to use greater force than necessary to make the arrest or search;
 and
        
 (2) when and to the degree the actor reasonably believes the force is
 immediately necessary to protect himself against the peace officer's . . .
 use or attempted use of greater force than necessary.
 

Id.
Thus, the general rule is that the
use of force to resist arrest that the actor knows is being made by a peace
officer is not justified even if the arrest is illegal. See Darty, 994
S.W.2d at 219 (citing Garner v. State, 858 S.W.2d 656, 661 (Tex.
App.--Fort Worth 1993, pet. ref'd)). An "exception" exists when the
peace officer first uses or attempts to use greater force than necessary to make
the arrest and search, and even then, the defendant may only use the degree of
force immediately necessary to protect himself or herself against the officer's
use of greater force. Id.; see Aguilar v. State, 914 S.W.2d 649, 651
(Tex. App.--Texarkana 1996, no pet.) (holding defendant entitled to submission
of defense of "excessive force" under section 9.31(c) where girlfriend
testified she saw defendant thrown to ground and "all of a sudden [the
officers] were on top of him" before he had made threatening or resisting
moves, raising inference that officers used prior excessive force).
In Darty, the evidence
raised issues as to whether the officer's excessive force took place before the
arrest, rather than in making the arrest, and as to whether the defendant knew
he was being arrested at the time of his use of force to resist the officer,
thereby entitling him to submission of the broader defense of necessity in the
event the jury chose to believe his testimony. In contrast, in this case, there
was no question that Appellant was being arrested when Appellant admittedly used
force in kicking the officer, and she admittedly knew at that time that she was
being placed under arrest by a peace officer. Therefore, under the evidence
here, section 9.31(b) precluded the defense of necessity as justification for
the offense of resisting arrest. We hold that the trial court correctly refused
to submit necessity as a defense, and adequately and properly submitted
Appellant's justification defense as allowed by the exception set forth in
section 9.31(c), allowing use of force in self-defense to protect against prior
use of excessive force by the officer. We overrule Appellant's first point.
Self-Defense
In her second point, Appellant
argues that the trial court erred by denying her motion for directed verdict
because the evidence established her defense of self-defense as a matter of law.
See Tex. Penal Code Ann. § 9.31(c). The substance of Appellant's
argument, however, attacks both the legal and factual sufficiency of the
evidence to defeat her prima facie showing of self-defense, which the trial
court submitted at her request. We will, therefore, construe her appeal as
encompassing both legal and factual sufficiency complaints, as well as a
challenge to the trial court's denial of her motion for directed verdict.
When reviewing legal sufficiency of
the evidence to support a verdict, we view all of the evidence in the light most
favorable to the verdict, asking whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 99 S. Ct. 2381 (1979); Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001). When a defendant challenges the legal sufficiency of evidence to support
rejection of a defense such as self-defense, we examine all of the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense and also could
have found against the defendant on the self-defense issue beyond a reasonable
doubt. Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).
The defendant has the burden of
producing some evidence to support the claim of self-defense. Zuliani v.
State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing Saxton,
804 S.W.2d at 914). Once the defendant produces such evidence, the State has the
burden of disproving the defense. Id. The burden of persuasion does not
require the State to produce evidence; rather, it requires only that the State
prove its case beyond a reasonable doubt. Id. When the jury finds the
defendant guilty, it implicitly finds against the defensive theory. Id.
The factual sufficiency standard
for guilt requires the reviewing court to ask whether a neutral review of all
the evidence demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, or whether the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A factual sufficiency
challenge to a verdict implicitly rejecting a defense requires us to review all
of the evidence in a neutral light and ask whether the State's evidence, if
taken alone, is too weak to support the finding and whether the proof of guilty,
although adequate if taken alone, is against the great weight and preponderance
of the evidence. Zuliani, 97 S.W.3d at 594-95.
We reject Appellant's argument that
the trial court erred in failing to grant a directed verdict because the
evidence established self-defense as a matter of law. We agree with the State
that the issue of self-defense, based upon the testimony of Appellant and her
family that conflicts with that of the officers, was a fact issue for the jury. See
Saxton, 804 S.W.2d at 913-14; Manuel v. State, 981 S.W.2d 65, 68
(Tex. App.--Fort Worth 1998), aff'd, 994 S.W.2d 658 (Tex. Crim. App.
1999). The jury was solely responsible for determining the credibility of the
witnesses and was free to accept or reject the defensive evidence. Saxton, 804
S.W.2d at 914.
We also reject Appellant's legal
and factual sufficiency complaints. Under the applicable standards of review, we
hold that the evidence was both legally and factually sufficient to support the
verdict of guilty and the jury's implicit rejection of Appellant's claim of
self-defense. See Zuliani, 97 S.W.3d at 594-95; Saxton, 804
S.W.2d at 913-14. The jury's evaluation of the credibility of Appellant, her
husband, and her father as witnesses was crucial to its verdict and the jury was
the sole judge of the weight of their testimony contrasted to the conflicting
testimony offered by the State.
As the State points out, Appellant
argues that the officer did not reasonably believe that he could legally arrest
Appellant for public intoxication and disorderly conduct because the land was
private and those offenses must be committed in a public place, and therefore,
he could not have been justified in using force. However, on redirect
examination, Deputy Hamilton testified that from his experience the land could
become public or quasi-public, and he reasonably believed he could arrest her
for those offenses. From the facts observed at the scene, the jury could have
concluded that he reasonably believed he could legally arrest Appellant for the
offenses cited, based on her actions and the public nature of the area.
As to Appellant's argument that the
State did not refute the evidence that the officer acted with excessive force
before she offered any resistance, Deputy Hamilton and other officers testified
she pulled away and tried to run to the house, stating she was not going to
jail, before he used force to stop her. The jury could have accepted Deputy
Hamilton's testimony that he believed the force he used was reasonable and not
excessive. The jury was also entitled to consider and accept the other officers'
testimony that Appellant struggled and fought with Deputy Hamilton, yelled
obscenities, pulled away, and ran toward the house before he stopped her; that
Deputy Hamilton did not "slam" or "throw" her to the ground
or hold her face in the dirt; and that Appellant fought again at the car, was
not hurt, but was "fine" when the police transported her. We overrule
Appellant's second point.
CONCLUSION
Having overruled both of
Appellant's points, we affirm the judgment of the trial court.
 
                                                       
   ANNE GARDNER
                                                       
   JUSTICE
 
PANEL B: HOLMAN, GARDNER, and
WALKER, JJ.
PUBLISH
DELIVERED: August 7, 2003

1. Testimony from law enforcement witnesses corroborated
Deputy Hamilton's version of events, and Appellant's family members corroborated
Appellant's version of events.