Criminal Case Template








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


MIGUEL RODRIGUEZ,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00497-CR

Appeal from the

County Court at Law No. 1

of El Paso County, Texas

(TC# 20020C16043)




O P I N I O N

           This is an appeal from a jury conviction for the offense of driving while intoxicated. 
The jury assessed punishment at 180 days’ confinement and a fine of $2,000. We affirm the
judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           The evidence at trial revealed that on September 23, 2002 at 2:27 a.m., Deputy Julio
Cesar Gonzalez of the El Paso County Sheriff’s Department, and his partner, Deputy Jose
Luis Hernandez, were patrolling near the 1800 block of Fabens Street in El Paso County,
Texas. Appellant’s vehicle passed them going the other direction with his hazard lights on. 
Deputy Gonzalez saw Appellant pull over to the side of the road, and he made a U-turn to
aid Appellant because Deputy Gonzalez thought Appellant was flagging the officers down
due to car problems. Appellant had stopped his vehicle half on and half off the road creating
a dangerous situation. When Deputy Gonzalez approached Appellant, he stated that his wife
was in labor and he was going to get her to take her to the hospital.


 He asked the officers
for an escort. Deputy Hernandez responded that they did not usually provide such a service. 
The officer noticed that Appellant’s eyes were red, his speech was slurred, and he smelled
of alcohol. There was a beer bottle between his legs.
           Appellant was asked to get out of the car. As Deputy Gonzalez and Appellant were
walking toward the patrol car, the deputy asked Appellant if he had been drinking. Appellant
responded that he had consumed two beers and that the deputy had seen him earlier at
Rodarte’s Bar. Deputy Gonzalez told Appellant that he was going to administer a field-sobriety test. No Miranda warnings were administered prior to the testing. At that juncture,
and not in response to any questioning, Appellant stated that he had consumed six beers.
           The first test given to Appellant was the Horizontal Gaze Nystagmus test. The results
of that test indicated that Appellant was intoxicated. Next, Deputy Gonzalez administered
the walk-and-turn test, and then the one-legged stand test. The results of both those tests
indicated Appellant was intoxicated. As a result of the tests and from observing Appellant’s
demeanor, the deputies concluded that Appellant was intoxicated and his mental and physical
faculties were impaired. Appellant was taken to the El Paso County Sheriff’s Station where
he was Mirandized and subsequent sobriety tests were performed. Both officers testified that
Appellant exhibited signs of intoxication during those tests. Appellant did not consent to a
breath test.
           Appellant’s common-law wife, Angelica Sanchez, testified on Appellant’s behalf. 
She stated that Appellant was at his grandmother’s house for a family gathering on
September 23. She did not attend the gathering as she was near delivery and she required bed
rest. She testified that she spoke with Appellant by phone at about 1 a.m. Appellant did not
seem to be intoxicated. Later she called Appellant to take her to the hospital because
Appellant had the only car. However, Appellant was arrested and the car was towed to her
residence. When the car arrived she and her mother drove to the hospital at approximately
7 a.m. She did not find any beer in the car; although she may not have noticed any beer due
to her feeling labor pains. She noted that Appellant had previously dislocated his ankle and
he had removed his cast before he was supposed to.
           Ana Chavez testified that she was at the party attended by Appellant. She stated that
Appellant had several beers and he did not consume any beer thereafter. She stated that it
was possible that Appellant consumed more beer during a period when she was gone from
the party. Chavez related that when she returned to the party, Appellant told her he needed
his car which she had borrowed because his wife was in labor.
           During the charge conference, Appellant argued that the statements he made to the
officers were made during custodial interrogation and were inadmissible. He requested the
following jury instruction:
On instruction of evidence the law provides that no evidence obtained by an
officer or other person in violation of any provision of the Constitution or laws
of the State of Texas or the Constitution or laws of the United States of
America shall be admitted in evidence against the accused in a trial in any
criminal case.
 
Before you consider the testimony of . . . Deputy Gonzalez and
Hernandez regarding statements of the defendant, if any, you must first find
and believe beyond a reasonable doubt that the statements were voluntarily
made. Unless the jury so believes beyond a reasonable doubt the jury shall not
consider such statements for any purpose or any evidence obtained as a result
thereof.

           The court denied Appellant’s request.

           Appellant also requested a jury instruction on the defense of necessity, which stated:
 
[Y]ou are instructed that conduct is justified if the actor reasonably believes
the conduct is immediately necessary to avoid imminent harm and that the
desirability and urgency of avoiding the harm clearly outweigh, according to
ordinary standards of reasonableness, the harm sought to be prevented by the
law proscribing the conduct.
 
The term conduct means an act or omission and its accompanying
mental state.
 
A reasonable belief means a belief that would be held by an ordinary
and prudent person in the same circumstance as the actor.
 
By the term ordinary standards of reasonableness is meant the standards
that an ordinary and prudent person would apply to the circumstances that the
actor faced.
 
Now, if you find from the evidence beyond a reasonable doubt on the
occasion in question the defendant did operate a motor vehicle while
intoxicated, but you further find from the evidence or you have a reasonable
doubt thereof that at the time of such conduct by defendant, if any, the
defendant reasonably believed that such conduct on his or her part was
immediately necessary to avoid imminent harm to wit: To prevent . . . harm
to the wife and unborn child.

           The court denied the requested instruction.

           During closing argument at the guilt-innocence stage of trial, the following exchange
occurred:
           STATE:        Now, as jurors you’re entitled to consider all the evidence in this case. 
Well, obviously, your job is to consider all the evidence in this case, but
one piece of evidence that you are entitled to consider is the fact that
the defendant refused to give a sample of his breath, okay? The refusal
to take a breath test can be considered by you as evidence of his guilt. 
And why is that so? A sample of his breath or a sample of his blood
could exonereate him, right? If he had not been drinking--
 
DEFENSE:Judge, this is a comment on his rights not to submit to the breath
test.
 
COURT:The objection is going to be sustained.
 
DEFENSE:We ask for a mistrial at this point, Your Honor.
 
COURT:Pardon me?
 
DEFENSE:We ask for a mistrial.
 
COURT:Overruled. Ladies and gentlemen of the jury, I’m going to
instruct you at this point to disregard attorney’s last remark as
far as the matter being evidence of guilt. The law permits you
to draw whatever inference you might want to draw from his
refusal to take that breath test, you can make whatever
inferences you like, but the fact that he did not take the breath
specimen test is not evidence of guilt whatsoever.
 
STATE:Thank you, Your Honor. I apologize for misstating the law. 
You’re able to deduce from that evidence that he--I mean you’re
able to consider it. And I would submit to you that the
defendant’s refusal to give a sample of his breath to be
scientificly [sic] tested would have proven that he was
intoxicated.
 
           DEFENSE:   Same objection, Your Honor, still a comment and ask for a mistrial.
 
COURT:I’m going to sustain the objection. And, again, ladies and
gentlemen of the jury, you will disregard the prosecutor’s last
comment as to what that would have shown. And again I will
instruct you that you can make whatever inferences you like, you
can do whatever you want with that detail of refusing to take the
breath test, draw your own inferences but once again that’s not
evidence of guilt. Motion for mistrial is overruled.

II. DISCUSSION
           In Issue No. One, Appellant asserts that the court erred by allowing incriminating
statements made by Appellant before he was Mirandized to come before the jury through the
testimony of the deputy sheriff. Specifically, Appellant contends that the deputies had
concluded Appellant was intoxicated prior to the administration of any sobriety tests;
therefore, the questioning concerning what, if anything, Appellant had to drink was a
custodial interrogation, and the statements should not have been admitted due to the failure
to provide the requisite Miranda warnings. Appellant also maintains that his failure to object
to the statements does not bar this Court’s consideration of the issue on appeal as the error
deprived Appellant of a fair and impartial trial.
           Regarding the last contention, as a prerequisite to presenting a complaint for appellate
review, the record must show that the complaint was made to the trial court by a timely
request, objection, or motion, and the trial court ruled on the request, objection, or motion. 
 Tex. R. App. P. 33.1(a)(1) and (2); Tucker v. State, 990 S.W.2d 261, 262 (Tex. Crim. App.
1999). Further, a party must continue to object every time inadmissible evidence is offered. 
Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); Gillum v. State, 888
S.W.2d 281, 285 (Tex. App.--El Paso 1994, pet. ref’d); Tex. R. App. P. 33.1. Error in the
admission of evidence is cured when the same evidence is admitted elsewhere without
objection. Ethington, 819 S.W.2d at 858; Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim.
App. 1984).
           In the present case, Appellant did not object when Deputy Gonzalez testified that
Appellant first stated that he had had two beers, and then six beers, and that the deputy had
seen him at Rodarte’s Bar. While Appellant did object later when Deputy Hernandez
testified that Appellant had stated that he had come from Rodarte’s Bar,


 Deputy Gonzalez
had already testified to that matter without objection thereby curing error, if any, that
occurred in admitting the testimony. Ethington, 819 S.W.2d at 858.
           However, Appellant asserts that this Court should determine that this was a
fundamental error effecting substantial rights thereby obviating the necessity of bringing the
matter to the court’s attention at trial. See Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim.
App. 2000). In Blue v. State, upon which Appellant relies in claiming fundamental error, the
trial court’s comments were an egregious violation of defendant’s rights. There, the court
inexplicably told the venire panel that the defendant had received a plea offer and was
contemplating whether to accept it and plead guilty. Blue, 41 S.W.3d at 130. The trial court
stated that he would “prefer” that the defendant plead, implying that the plea should be one
of guilty. Id. Then the trial judge attempted to explain why a defendant, though innocent,
might decide to not testify. Id. In his explanation, he included an illustrative example of an
attorney, putting a guilty “Sister Teresa” on the stand because she looks so innocent and
“nobody thinks she would tell a lie.” Id. Defendant Blue did not object to any of these
statements. Id. The Court of Criminal Appeals, by a plurality, found that the trial judge’s
comments tainted the presumption of innocence of the defendant, and that such comment was
fundamental error of constitutional dimension not requiring objection at trial. Blue, 41
S.W.3d at 129, 132. Two judges concurred, finding that the judge’s comments violated the
right to an impartial judge or an impartial tribunal. Id. at 135.
           Clearly, comments that taint the defendant’s presumption of innocence are
fundamental and require no objection. United States v. Lanham, 416 F.2d 1140, 1143-44
(5th Cir. 1969). Likewise, the right to an impartial judge or tribunal has always been
recognized. U.S Const. amend. V, VI; Tex. Const. art. I, §§ 10, 19. It is because these
rights were implicated that the comments were held to be fundamental and subject to
assertion for the first time on appeal. Oulare v. State, 76 S.W.3d 231, 233 (Tex. App.--Amarillo 2002, no pet.). Nevertheless, in Blue, one writer warned that the judge’s comments
were “so egregious” as to deem him biased and that the case was “highly unique and litigants
should not view this holding as an invitation to appeal without making proper, timely
objections.” Blue, 41 S.W.3d at 139.
           Declaring an error to be so fundamental as to require no objection during trial is
something we must approach with great caution. This caution is reflected in several opinions
distinguishing Blue. See Saldano v. State, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002)
(equal protection and due process violations in admission of expert testimony that race and
ethnicity were a factor in determining future dangerousness was not fundamental error);
Oulare, 76 S.W.3d at 233-34 (comments of trial judge purportedly implying that police
officers were telling the truth and that identified the jurors as “a vital part of our government”
was not fundamental error). We note that in Saldano, the Court of Criminal Appeals stated
that they had consistently held that the failure to object in a timely and specific manner
during trial forfeits complaints about the admissibility of evidence. Saldano, 70 S.W.3d at
889 (citing Gauldin v. State, 683 S.W.2d 411, 413 (Tex. Crim. App. 1984) (statements
obtained in violation of Miranda must be objected to), overruled on other grounds, State v.
Guzman, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998)). Accordingly, Appellant has waived
his contention on appeal and Issue No. One is overruled.
           In Issue No. Two, Appellant argues that the court erred by refusing to grant
Appellant’s requested instructions in the court’s charge. As stated, Appellant requested
instructions on the voluntariness of the statements made to the deputies and on the defense
of necessity.
           Generally, when evidence from any source raises a defensive issue and the defendant
properly requests a jury charge on that issue, the trial court must submit the issue to the jury.
Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (citing Moore v. State, 574
S.W.2d 122, 124 (Tex. Crim. App. 1978)). The trial court must instruct the jury to disregard
illegally obtained evidence if the defendant raises a fact issue concerning the manner in
which the evidence was obtained and requests the instruction. Thomas v. State, 723 S.W.2d
696, 707 (Tex. Crim. App. 1986). The evidence which raises the issue may be strong, weak,
contradicted, unimpeached, or unbelievable. Muniz, 851 S.W.2d at 254 (citing Sanders v.
State, 707 S.W.2d 78, 80 (Tex. Crim. App. 1986)). Further, article 38.23(a) provides that in
any case where a party raises an issue regarding whether evidence was obtained in violation
of the laws of Texas or the United States, the jury shall be instructed that if it believes, or has
a reasonable doubt, that the evidence was obtained because of such a violation, then the jury
shall disregard any such evidence. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon
2005).
           The prosecution may not use statements, whether exculpatory or inculpatory,
stemming from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against self-incrimination. Miranda
v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Custodial
interrogation means questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action in any significant way. Id. 
Article 38.22 of the Texas Code of Criminal Procedure codifies Miranda’s procedural
safeguards. Article 38.22 prohibits the admission of a written or oral statement made as a
result of custodial interrogation by an accused in a criminal proceeding without the warnings
required by Miranda. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3 (Vernon 2005). 
However, article 38.22, section 5 of the Code of Criminal Procedure states that nothing in
article 38.22 precludes the admission of a statement that is either: (1) res gestae of the arrest
or offense; (2) a statement that does not stem from custodial interrogation; or (3) a voluntary
statement, whether or not the result of custodial interrogation. Tex. Code Crim. Proc. Ann.
art. 38.22, § 5 (Vernon 2005). The State maintains that Appellant’s two statements to the
deputies did not stem from a custodial interrogation. We agree.
           Facts similar to those in the instant case are found in Berkemer v. McCarty, 468 U.S.
420, 422-23, 104 S.Ct. 3138, 3141-42, 82 L.Ed.2d 317 (1984), and in Pennsylvania v.
Bruder, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). In Berkemer, the United States
Supreme Court considered the admissibility of statements elicited from a motorist during a
routine traffic stop. There, the trooper observed a car weaving in and out of a lane on IH
270. The trooper followed the driver for two miles, stopped him, and asked him to get out
of the car. Noticing the suspect was having difficulty standing, the trooper concluded he was
going to charge the suspect with a traffic offense, although he did not communicate that fact
to the suspect at that point in time. The trooper then asked the driver to perform a field-sobriety test, which the driver could not do without falling down. The trooper asked the
suspect if he had been using intoxicants, and the suspect replied he had consumed two beers
and smoked marijuana a short time before. The suspect’s speech was slurred. The trooper
then placed him under arrest. Berkemer, 468 U.S. at 423, 104 S.Ct. at 3141-42.
           The Supreme Court held that the traffic stop under those facts did not constitute
custody for Miranda purposes. Id. at 440, 104 S.Ct. at 3150. Features of an ordinary traffic
stop that mitigate the dangers associated with questioning in such a circumstance are the
presumptively brief and temporary nature of the stop, the presence of usually one or at most
two policemen, and the public nature of the stop (at least to some degree). Id. at 437-39, 104
S.Ct. at 3148-50 (citing Miranda, 384 U.S. at 467, 86 S.Ct. at 1624). As pointed out by
Berkemer, the ordinary traffic stop is substantially less “police dominated” than other kinds
of interrogation. Id.
           The Texas Court of Criminal Appeals adopted the Berkemer analysis in State v.
Stevenson, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997). In Stevenson, the driver of a motor
vehicle and his wife were involved in a one-car accident with a road sign. Id. at 825. An
officer arrived on the scene to conduct an accident investigation. Id. The officer asked the
driver who was driving the car. Id. The driver responded that his wife was driving. Id. The
officer then asked the driver’s wife the same question, and she gave him the same response. 
Id. During the subsequent investigation, the officer noticed that the driver’s wife was injured
in a way consistent with her being the passenger. Id. The officer then asked again who had
been driving. Id. The driver admitted that he had been driving. Id. The officer noticed that
the driver smelled of alcohol and when he administered field-sobriety tests on the driver, the
driver failed. Id. The driver was then arrested but he was not given Miranda warnings
before his arrest. Id. at 825-26.
           After recognizing the Supreme Court’s holding that a routine traffic stop does not
constitute “custody” for purposes of Miranda, the Stevenson court also addressed the issue
of when subsequent events may cause a non-custodial encounter to escalate into custodial
interrogation. Police conduct during an encounter may cause a consensual inquiry to escalate
into custodial interrogation. Ussery v. State, 651 S.W.2d 767, 770 (Tex. Crim. App. 1983). 
The court acknowledged that “[i]f a motorist who has been detained pursuant to a traffic stop
thereafter is subjected to treatment that renders him ‘in custody’ for practical purposes, he
will be entitled to the full panoply of protections prescribed by Miranda.” Berkemer, 468
U.S. at 440, 104 S.Ct. at 3150.
           In determining whether a non-custodial encounter has escalated into custodial
interrogation, the Stevenson court made reference to four factors discussed in Dowthitt v.
State, 931 S.W.2d 244 (Tex. Crim. App. 1996): (1) when the suspect is physically deprived
of his freedom of action in any significant way; (2) when law enforcement officers tell a
suspect that he cannot leave; (3) when law enforcement officers create a situation that would
lead a reasonable person to believe that his freedom of movement has been significantly
restricted; and (4) when there is probable cause to arrest and law enforcement officers do not
tell the suspect that he is free to leave. Id. at 255. In the first, second, and third situations,
the restrictions upon freedom of movement must amount to the degree associated with an
arrest as opposed to an investigative detention. Id. With regard to the fourth scenario, the
officers’ knowledge of probable cause must be manifested to the suspect. The court in
Stevenson concluded that the mere fact that a suspect becomes the focus of a criminal
investigation does not convert a roadside stop into an arrest, and that the investigation in
Stevenson was no more intrusive than the fact situation in Berkemer. Stevenson, 958 S.W.2d
at 829. The determination of whether one is in custody is based entirely upon objective
circumstances, not subjective belief. Id. (citing Dowthitt, 931 S.W.2d at 254-55). The
determination is made on an ad hoc basis, after considering all of the objective
circumstances. Shiflet v. State, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).
           In the present case, the deputies were in the process of investigating a DWI case when
Deputy Gonzalez asked Appellant if he had been drinking. Appellant responded that he had
consumed two beers. When Appellant was told that the deputies were going to administer
field-sobriety tests, Appellant volunteered that he had consumed six beers and had been at
Rodarte’s Bar earlier. Appellant was not arrested until after he failed the field-sobriety tests. 
Under these circumstances, those conversations were not in response to a custodial
interrogation. As such, the deputies were not required to give Miranda warnings at that
juncture. The court did not err in failing to give an instruction on the voluntariness of
Appellant’s statements.
           Appellant’s next assertion is that the court erred in failing to give the requested
instruction on necessity. Tex. Penal Code Ann. § 9.22 (Vernon 2003) provides:
Conduct is justified if:
(1) the actor reasonably believes the conduct is immediately necessary to avoid
imminent harm;
 
(2) the desirability and urgency of avoiding the harm clearly outweigh, according to
ordinary standards of reasonableness, the harm sought to be prevented by the law
proscribing the conduct; and
 
(3) a legislative purpose to exclude the justification claimed for the conduct does not
otherwise plainly appear.

           If evidence from any source, be it strong, weak, unimpeached, or contradicted, raises
a defensive theory, it must be included in the court’s charge. Hayes v. State, 728 S.W.2d
804, 809 (Tex. Crim. App. 1987). Imminent means something that is impending, or that is
on the point of happening, not about to happen. See Darty v. State, 994 S.W.2d 215, 218-19
(Tex. App.--San Antonio 1999, pet. ref’d); Garcia v. State, 972 S.W.2d 848, 849 (Tex. App.--Beaumont 1998, no pet.). Moreover, in order to raise the defense of necessity, a defendant
must admit he committed the offense charged and then offer necessity as a justification. See
Young v. State, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999). In this instance, there must
be evidence that Appellant reasonably believed that driving his car while intoxicated was
necessary to avoid imminent harm. Harm is imminent when there is an emergency situation
and it is “immediately necessary” to avoid that harm. In other words, a split-second decision
is required without time to consider the law. Jackson v. State, 50 S.W.3d 579, 595 (Tex.
App.--Fort Worth 2001, pet. ref’d). Further, there must be evidence that Appellant was faced
with an urgent need to avoid harm that outweighed the harm sought to be prevented by
driving while intoxicated. Garcia, 972 S.W.2d at 850.
           Initially, we note that Appellant did not admit to the offense. He pleaded not guilty
and put a witness on the stand who testified that Appellant had not been drinking prior to
leaving the party in his car. On that basis, Appellant was not entitled to an instruction on
necessity. See Maldonado v. State, 902 S.W.2d 708, 712 (Tex. App.--El Paso 1995, no pet.). 
           Furthermore, even if we assume that the harm was impending, a reasonable person in
the same circumstances would have called someone else or an ambulance to transport a
woman in labor to the hospital if such harm was imminent rather than drive her to the
hospital while intoxicated. Accordingly, Appellant has failed to present any evidence that
he reasonable believed that his criminal conduct was immediately necessary to avoid any
alleged harm. The court did not err in denying Appellant’s requested instruction on
necessity. Issue No. Two is overruled.
           In Issue No. Three, Appellant maintains that the prosecutor utilized improper jury
argument. Particularly, Appellant asserts that in making the above-referenced comments, the
prosecutor made impermissible arguments to the jury about their being able to consider
Appellant’s refusal to take the breath test as being evidence of guilt. Appellant seems to
primarily couch his argument in terms of prosecutorial misconduct. Claims of prosecutorial
misconduct are determined on a case-by-case basis. Stahl v. State, 749 S.W.2d 826, 830
(Tex. Crim. App. 1988); Perkins v. State, 902 S.W.2d 88, 96 (Tex. App.--El Paso 1995, no
pet.). Prosecutorial misconduct has been found where the prosecutor’s actions deliberately
violated an express court order and where the prosecutor’s misconduct was so blatant as to
border on being contumacious. Stahl, 749 S.W.2d at 831 (citing Landry v. State, 706 S.W.2d
105, 111 (Tex. Crim. App. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 242, 93 L.Ed.2d 167
(1986)). However, where a defendant does not object on the basis of prosecutorial
misconduct, any error is waived. Accordingly, as Appellant did not object on that ground,
he has waived this contention on appeal.
           Even if Appellant had preserved this issue on appeal, we note that by statute, a
defendant’s refusal to take a breath test is admissible in evidence. Tex. Transp. Code Ann.
§ 724.061 (Vernon 1999). The United States Supreme Court has determined that the refusal
to take a breath test is admissible and does not violate the privilege against self-incrimination. 
South Dakota v. Neville, 459 U.S. 553, 564, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983). In
addition, it is not fundamentally unfair for the refusal to be considered as evidence of guilt. 
Id. at 565-66, 103 S.Ct. at 923-24. Texas courts have further held that it is proper for a trial
court to instruct the jury that breath test refusal is evidence of guilt. See Bright v. State, 865
S.W.2d 135, 137 (Tex. App.--Corpus Christi 1993, pet. ref’d); Finley v. State, 809 S.W.2d
909, 913 (Tex. App.--Houston [14th Dist.] 1991, pet. ref’d). As such, we overrule Issue No.
Three.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
                                                                  RICHARD BARAJAS, Chief Justice

September 22, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)