**AFFIRMED as MODIFIED and Opinion Filed November 15, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-22-00769-CR**
_____

**CEDRIC DERANE SHAW, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-21-76289-V**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Goldstein

On the Court's own motion, we withdraw our opinion issued June 12, 2023,

and vacate our judgment of that date. The following is now the opinion of the Court.

Cedric Derane Shaw appeals his aggravated assault conviction. Appellant

pled guilty and, pursuant to the terms of a plea bargain agreement, the trial court

found appellant guilty and sentenced him to eight years' confinement. In a single

issue, appellant argues the trial court should have sua sponte withdrawn his guilty

plea. In a single issue, the State asks this Court to reform the trial court's judgment

to correctly reflect the terms of the plea bargain. As reformed, we affirm the trial court's judgment.

In November 2021, appellant was charged by indictment with aggravated robbery, a first degree felony. The indictment alleged that appellant, while in the course of committing theft of property and with intent to obtain or maintain control of said property, caused serious bodily injury to complainant, by stomping complainant's head into the floor.

On the day of trial, June 27, 2022, the trial court advised appellant that as charged by indictment, the punishment range for the first-degree felony was anywhere from five years to life in prison. The trial court then confirmed its understanding of the plea bargain agreement wherein the state dismissed another pending felony and reduced this pending charge to a second-degree felony, non-deadly weapon finding, aggravated assault causing serious bodily injury, with a punishment range from two to twenty years. Appellant entered into a plea agreement with the State whereby the charged offense of aggravated robbery was reduced to aggravated assault, appellant pled guilty, and the plea remained open as to the availability of deferred probation and the "State capping prison time at 10 yrs." At trial, appellant testified he understood the trial court's statement that the case involved an "open plea" in that the court had "the full range of punishment between probation and 10 years available" in sentencing him. In response to questioning from the trial court, appellant said he had gone over the indictment and understood

the charge against him, he understood the range of punishment was between probation and ten years, and he pled guilty freely and voluntarily. The trial court then entered appellant's judicial confession into evidence.

The State called the complainant, James Harris, who testified he lived in a boarding house on June 18, 2021, where he was awakened by appellant knocking on his window. Appellant asked Harris to let him in the locked door as Harris had done two or three times before, and Harris told appellant "he needed to talk to his aunt who kept locking the door." Appellant's uncle let him in, and appellant came back and started pounding on Harris' door. The door only had a "screen door latch," and it was "about to give way anyway," so Harris opened the door. Appellant immediately hit Harris three times and knocked him out. When Harris regained consciousness, he saw appellant had his wallet and was going through it. Appellant dropped Harris' wallet, jumped down and grabbed Harris around the throat, pushed him back down, and started hitting him in the face again. Harris was "going in and out of consciousness," and when he woke up again, appellant "started stomping" him. Appellant "stomped [Harris'] upper body and [his] face." When Harris regained consciousness the last time, appellant was gone. Harris looked for his phone to call for help, but his phone was also gone. Harris "tried to say help me," but his jaw was dislocated and broken, and his "palate was knocked out of [his] head." Appellant's uncle came and called 911 for Harris.

After an ambulance transported Harris to the hospital, Harris was "in and out of consciousness for days." Harris' eyelids were swollen, so "they had to cut [his] eyelids because of the swelling," and the nerves on one side of his face were dead. As a result of the nerve damage at the side of his mouth, food and drink sometimes fell out of Harris' mouth. Harris also suffered a traumatic brain injury that caused him to have trouble remembering things. At the time of trial, Harris had undergone four surgeries to put plates behind his eyes because the occipital bones were broken around his eyes.

Harris testified he did not remember how long he was in the hospital, but when he was released he went back to his boarding house room and "everything was gone." Harris had "a t-shirt, a pair of shorts and a pair of tennis shoes, and everything else [he] owned was gone." Harris' "job wouldn't let [him] go back to work because of the way [he] looked." Harris was "trying to stay" at his room, and he had "a little couch in there." Harris was outside rolling up an extension cord when he saw appellant walking down the sidewalk. Appellant came up to Harris and said he was "sorry about the other night" and "had a lot of things on his mind." Harris said "that's not a good way to handle that" and asked if appellant still had Harris' phone. Appellant said he left the phone "on a bus somewhere, and it was gone." Harris testified the phone had all of his contacts and pictures of his mother and sister on it. Harris applied for crime victim compensation but had received no money at the time

of trial. Harris had not been able to pay his medical bills, and a bill for $148,000 was "going into the collection agency."

Appellant was called by the defense and testified he could not "really remember how everything just went" on the night of the assault. Appellant remembered he "kind of hit him" but he did not "remember stomping him at all." On cross examination, appellant testified he was diagnosed with "schizo effective disorder/bipolar" in 1999, and he was forty-two years old at the time of trial. When shown a photograph of Harris' injuries, appellant testified "I hit him," but appellant could not remember details because he "was out of his mind" and there "was a lot of stuff going on, like, ghosts" and he "was seeing things that wasn't there." Appellant testified he "was going through a lot of demon stuff" and his "mind was just tripping," but he was "more clear" at trial

Prior to entering its ruling the trial court accepted appellant's "plea of guilty to the lesser included offense as freely and voluntarily made" and found that appellant was "competent to enter the plea" and "do[es] find it does prove beyond a reasonable doubt that you are guilty". The trial court found appellant guilty and sentenced him to eight years' confinement. Appellant filed a motion for new trial challenging the sufficiency of the evidence without specificity, which was overruled

by operation of law.  The motion for new trial did not assert that appellant's guilty plea was involuntary.  This appeal followed.[1]

In a single issue, appellant argues the trial court should have sua sponte withdrawn his guilty plea when his testimony raised a legitimate concern about the factual basis for the plea.  Specifically, appellant asserts his testimony raised a fact issue concerning his knowledge that he stomped on the complainant as alleged in the indictment and, in turn, raised a fact issue concerning the voluntariness of his plea.

Appellant did not complain to the trial court about the voluntariness of his guilty plea either before or after his sentencing, including in his motion for new trial. *See* TEX. R. APP. P. 33.1(a)(1).  Moreover, when the trial judge acts as the fact finder in a case, even if evidence is presented that raises an issue as to a defendant's guilt, the judge is not required to withdraw a defendant's guilty plea sua sponte and enter a plea of not guilty.  *See Mendez v. State*, 138 S.W.3d 334, 339, 350 (Tex. Crim. App. 2004); *Aldrich v. State*, 53 S.W.3d 460, 468–69 (Tex. App.—Dallas 2001), *aff'd*, 104 S.W.3d 890 (Tex. Crim. App. 2003).  Rather, the trial judge's duty is to consider all of the evidence submitted, and the judge may find a defendant guilty as charged, guilty of a lesser-included offense, or not guilty, as the evidence requires.

---

[1] The record before us contains the Trial Court's Certification of Defendant's Right of Appeal signed November 14, 2022, reflecting this criminal case "is a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal."

*See Aldrich*, 53 S.W.3d at 467. Thus, the trial court had no duty to sua sponte withdraw appellant's guilty plea and did not err in failing to do so. *See id.*

Further, the record shows the trial court admonished appellant orally and in writing about the punishment range for the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a), (c); *Kirk v. State*, 949 S.W.2d 769, 771 (Tex. App.—Dallas 1997, pet. ref'd). Appellant testified he understood the punishment range for the offense and testified he had gone over the indictment and understood the charge against him. Although appellant testified that he did not "remember stomping [Harris] at all," appellant did not deny stomping Harris and admitted he assaulted Harris with his fists. Nothing in the record shows appellant was unaware of the nature of the charge against him or the consequences of his plea or that he was harmed or misled by the trial court's admonishments. *See Aguirre-Mata v. State*, 125 S.W.3d 473, 477 (Tex. Crim. App. 2003). We overrule appellant's sole issue.

In a single issue, the State asks this Court to reform the trial court's judgment to correctly reflect the terms of the plea bargain. As the State points out, the judgment says "OPEN" in the space for indicating the terms of a plea bargain when, in fact, appellant entered into a plea bargain agreement whereby the charge against him was reduced to aggravated assault and his sentence was capped at ten years' imprisonment. An agreement between the defendant and the State to cap punishment constitutes a plea bargain agreement. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003). This Court "has the power to correct and reform

–7–

the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we sustain the State's cross-issue and reform the judgment to reflect the terms of appellant's plea bargain agreement.

As reformed, we affirm the trial court's judgment.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220769F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

CEDRIC DERANE SHAW,
Appellant

No. 05-22-00769-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-21-76289-V.
Opinion delivered by Justice Goldstein. Justices Nowell and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

In the space marked "Terms of Plea Bargain," the word "OPEN" is deleted, and the following language is substituted: "charge reduced to aggravated assault and sentence capped at ten years' imprisonment."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered November 15, 2023